[No. C001356. Third Dist. Jan. 22, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL JOHN ALMEDA, Defendant and Appellant.

[Opinion certified for partial publication.*]

* Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of part II.

COUNSEL

Kent A. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WATKINS, J.***—Defendant was convicted of burglary (count I; Pen. Code, § 459),[1] robbery of an inhabited dwelling house (count II; §§ 211, 213.5), attempted murder (count III; §§ 664, 187, subd. (a)) and knowingly receiving stolen property (count V; § 496) arising out of one incident, and of another count of robbery (count IV, § 211) stemming from a second incident. In connection with the first three counts, the jury found that defendant intentionally inflicted great bodily injury (§ 12022.7) upon a person over 60 years old (§ 1203.09) and personally used a deadly weapon. (§ 12022, subd. (b).) After the receiving stolen property count was dismissed, defendant was sentenced to state prison for 14 years 8 months.[2]

On appeal, defendant argues the deadly weapon use enhancement on count II was improper and contends the court erred by imposing sentence for both the attempted murder and robbery convictions because they were incident to the same objective. (§ 654.) We do not agree and shall affirm the judgment.

FACTS

Defendant was convicted of crimes arising out of two separate incidents. His contentions of error relate to the convictions connected to only one of those and thus our factual recitation discusses only those crimes.

At about three in the morning of August 9, 1985, Mrs. Annabelle Harris, the 75-year-old victim, was awakened as two men opened the heavy door separating her bedroom from the outdoor patio. Defendant approached Mrs. Harris, who was in bed, and told his companion to "go see what you can get," during which time he (defendant) would "take care of" the victim.

Defendant grabbed the victim's legs, pulled them to the bedside, and placed his knee in her abdomen. He said there was a contract out on her and that he would have to kill her. He explained she would have to turn

---

* Assigned by the Chairperson of the Judicial Council.
[1] All further statutory references are to the Penal Code.
[2] The sentence was determined in the following manner: the court imposed the nine-year upper term for attempted murder (count III) with a three-year consecutive enhancement for the intentional infliction of great bodily injury; one-third the midterm, or one year four months, imposed consecutively for the robbery of an inhabited dwelling (count II) with one-third of the one-year deadly weapon use enhancement added to that; and one-third of the midterm, or one year, added consecutively for the other robbery count (count IV). The sentence imposed for the burglary (count I) and the remaining deadly weapon enhancements were stayed (§ 654.) The enhancement for infliction of great bodily injury in connection with count II was stricken.

over her money and jewelry first; when she said she had none, defendant began beating her on the head, raining down blow after blow. After using his fists, defendant took the telephone receiver from the side of the bed and resumed beating her with it, telling her he would have to kill her. Defendant's attempt to strangle his victim with the telephone cord failed when she was able to hold the cord in her mouth, so defendant continued to beat her and split open her lip.

The beating stopped when defendant was called into the living room to render assistance to his cohort. On his way out of the bedroom, defendant took a 25-inch television set.

Mrs. Harris heard the screen door to the garage open and close, after which defendant asked where her car keys were. She explained they were in the car. Defendant said he would return to kill her. Understandably motivated by this prospect, Mrs. Harris (who ordinarily was confined to a wheelchair) managed to make her way out of bed and outside to the fence, where she began to scream for help. Just then, she heard a car back out of her garage. After waiting a few minutes she made it back inside to her wheelchair and called police.

Mrs. Harris was taken to the hospital, where she remained for 16 days. Six months later, at the time of trial, she was still seeing a doctor because the effects of defendant's attack upon her persisted.

Defendant and his accomplice took two television sets, including the one from the bedroom, several pieces of art, a vacuum cleaner and Mrs. Harris's checkbook, which contained a number of checks already signed.

Defendant's fingerprint was found on the telephone receiver used to beat the victim; his codefendant's fingerprint was found in the living room. Neither man had been inside Mrs. Harris's home before the attack. When defendant was apprehended, Mrs. Harris's television set and vacuum cleaner were present.

## I

Defendant first argues the court erred when it imposed an enhancement for use of a deadly weapon (§ 12022, subd. (b)) in connection with his conviction for robbery of an inhabited dwelling. There was also charged as an enhancement to that count the infliction of great bodily injury (§ 667.5, subd. (c)). Although the jury found each of these enhancements to be true the great bodily injury enhancement was stricken by the court at

sentencing. The contention of error emanates from the court's decision to strike that enhancement. We find no error.

■ Defendant argues that striking the finding of great bodily injury means the robbery was not a violent felony (§§ 1170.1, 667.5, subd. (c)) and thus the imposition of a consecutive four-month enhancement for use of a deadly weapon was improper. Not so.

Section 1170.1 permits the imposition of consecutive sentences whereby subordinate terms are imposed by staying all but one-third of the midterm. In pertinent part, that section permits the imposition of an additional one-third of any enhancement for the use of a deadly weapon (§ 12022, subd. (b)) only if the underlying subordinate crime is a violent felony as defined by section 667.5, subdivision (c). (§ 1170.1, subd. (a).)

Subdivision (c) of section 667.5, after enumerating specific felonies which are considered violent, also includes within that characterization "[a]ny other felony in which the defendant inflicts great bodily injury on any person other than an accomplice *which has been charged and proved* as provided for in Section 12022.7 . . . ." (*Id.,* subd. (c)(8), italics added.) Section 12022.7 permits imposition of an enhancement only if ". . . the fact of great bodily injury is *charged in the accusatory pleading and* admitted or *found to be true by the trier of fact.*" (Italics added.)

Defendant contends that because the court struck the finding of great bodily injury in connection with the robbery, that crime cannot fall within the statutory definition of a violent felony and thus imposition of any portion of the enhancement is forbidden by section 1170.1, subd. (a). This contention is specious. The statutes permit the enhancement to be tacked on when the fact of great bodily injury is charged in the accusatory pleading and found true by the jury. Both of these requirements were met in the instant case. While the judge ultimately struck the finding,[3] that act does not undo the jury's finding true a properly charged allegation of the infliction of great bodily injury. Whether the finding is ultimately stricken or not, the crime is still a violent felony because the statutory requirements have been met. Defendant's argument flies in the face of the clear statutory language and must be rejected.

---

[3] The court noted that because it had imposed an enhancement for the infliction of great bodily injury in connection with the attempted murder conviction and there was but one incident of such injury infliction, the enhancement should not be imposed again for the robbery conviction. (See *People* v. *Moringlane* (1982) 127 Cal.Ap .3d 811, 817-819 [179 Cal.Rptr. 726].)

## II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

---

* See footnote, *ante,* page 1200.