[No. D004919. Fourth Dist., Div. One. Oct. 27, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EDWIN DOBSON, Defendant and Appellant.

**COUNSEL**

Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Frederick R. Millar, Jr., Jay Bloom, Sara Gros-Cloren and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—A jury convicted Michael Edwin Dobson of attempted voluntary manslaughter (Pen. Code, §§ 664/192)[1] forcible oral copulation (§ 288a, subd. (c)), and rape (§ 261, subd. (2)) finding that in the commission of each offense Dobson inflicted great bodily injury (§§ 12022.7 and 12022.8) and used a deadly weapon (§§ 12022, subd. (b) and 12022.3, subd. (a)). The court sentenced Dobson to prison for thirty-seven and one-half years: the upper term of five and one-half years for attempted manslaughter with the great bodily injury enhancement (§ 12022.7) stayed and consecutive upper term eight-year sentences for the rape and forcible oral copulation, each enhanced by five years for inflicting great bodily injury (§ 12022.8) and three years for using a deadly weapon (§ 12022.3, subd. (a)). Dobson appeals contending sentencing errors require resentencing. We partially agree. As we shall explain we conclude the court erred in enhancing the sex offenses because Dobson's infliction of great bodily injury and use of a deadly weapon occurred solely in his attempt to kill the victim and not in the commission of his earlier sex offenses. We reject the remainder of his arguments, but remand for resentencing.

### FACTS

On the evening of February 4, 1984, Bobbie C. was driving on Highway 5 south of San Clemente. Another driver, Dobson, drew her attention to an unfastened tailgate on the pickup she was driving. Bobbie C. pulled her car over to the side of the road. Dobson also stopped. He entered her car and dragged her into some bushes. Threatening to kill her if she resisted, Dobson then forced her to orally copulate him and raped her. Dobson then said he had to kill her because she could identify him. Dobson beat her severely, repeatedly asking why she did not die.

Dobson conceded the commission of the sex offenses. His testimony was directed primarily to refuting the element of malice in the attempted murder count. Acknowledging Bobbie C.'s right to hit him, he said, "I just lost my temper because I have never liked women to hit me. When people hit me, I always hit them back." He recalled striking her repeatedly but had no recollection of using any implement to hit her. He did not remember choking or kicking her, even though the facts clearly established Dobson viciously beat his victim with a six-inch rock and one of her boots. Dobson also presented evidence he was fatigued and his mental state affected because of overwork and drug use. Bobbie C. was hospitalized and treated for multiple facial, skull, rib and finger fractures.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

## DISCUSSION

### I

■ Dobson argues the court erred when it imposed great bodily injury and weapons use enhancements to the sex offenses contending those enhancements occurred solely during his later attempt to kill the victim. Alternatively he says the court erred in failing to apply section 654 to the attempted manslaughter sentence since his attempt to kill the victim was to avoid detection for the sex offenses thereby requiring a stayed sentence. These arguments require a further discussion of the facts forming the basis for the court's determination that it could impose consecutive sentences for each offense.

■ Before the court sentenced Dobson it said: ". . . [Dobson's] first objective was—or involved sexual satisfaction in a violent way. This was accomplished by means of the rape and the forcible oral copulation. When that was finished, I believe he formed a different and separate objective and intent, and that was the objective to kill because he was afraid that the victim would identify him. His intents and objectives were different, I believe, in these two instances. . . . [¶] When the defendant had finished raping the victim, he got back up, he looked at her, and said, 'Now I have to kill you, bitch, because you can identify me.' It was at this point that the defendant put both his hands on the victim's throat and began to strangle her. While continuing to strangle the victim, the defendant yelled at her, 'You're going to die, bitch; you might as well give up, you're going to die and no one can hear you; you have to die.' When he was unable to strangle her manually, he continued and tried to strangle her with a belt. The belt broke before he could successfully strangle her. This appeared to anger Mr. Dobson even more and he continued to yell at the victim that she had to die, 'Why aren't you dying?' [¶] The victim at this point or after some further abuse, said that she was dying and that he should leave her and that she promised to die and the defendant then said, 'You can identify me, I can't leave you because you're still moving.' [¶] I go into the details of this because I want the Court of Appeal to understand why I've concluded that we are dealing with multiple criminal objectives and that the objectives are different."

The court's finding that Dobson had separate "intents and objectives" is amply supported by the evidence. Dobson's assertion that the court second-guessed the jury and sentenced him as though he had been guilty of attempted murder is meritless. The jury's finding that Dobson was guilty of attempted manslaughter and not attempted murder was predicated on its determination of his diminished mental condition rather than because it disbelieved the victim. (See *People* v. *Poddar* (1974) 10 Cal.3d 750, 757 [111

Cal.Rptr. 910, 518 P.2d 342].) Consequently the court's imposition of consecutive sentences for each offense was lawful. The enhancements, however, present a different question.

Section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

■ Although the cases are not in total agreement (compare *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 817-819 [179 Cal.Rptr. 726] with *People* v. *Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629]) it is now well-accepted that section 654 applies to enhancements. (*People* v. *Almeda* (1988) 197 Cal.App.3d 1200, 1204, fn. 3 [243 Cal.Rptr. 337]; *People* v. *Barker* (1986) 182 Cal.App.3d 921, 941 [227 Cal.Rptr. 578]; *People* v. *Dominick* (1986) 182 Cal.App.3d 1174, 1209-1210 [227 Cal.Rptr. 849]; *People* v. *McElrath* (1985) 175 Cal.App.3d 178, 192 [220 Cal.Rptr. 698]; *People* v. *Carter* (1983) 144 Cal.App.3d 534, 543 [193 Cal.Rptr. 193]; *People* v. *Turner* (1983) 145 Cal.App.3d 658, 683, fn. 7 [193 Cal.Rptr. 614]; *People* v. *Moringlane, supra*; contra *People* v. *Warinner* (1988) 200 Cal.App.3d 1352 [247 Cal.Rptr. 197]; see also discussion at 8 Cal. Center for Judicial Education & Research J., Felony Sentencing, June 1987, § 97, 245-108, 109.) Section 654 proscribes double punishment for multiple violations of the Penal Code based on the "same act or occurrence" (*People* v. *Siko* (1988) 45 Cal.3d 820, 821 [248 Cal.Rptr. 110, 755 P.2d 294]) regardless if those violations are defined as offenses or enhancements (*People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117 [212 Cal.Rptr. 888]).

■ The sentencing court here was obviously aware of the application of section 654 to enhancements because it stayed the enhancements on the voluntary manslaughter. The reason the court could attach the great bodily injury and weapons use enhancement to each sex offense is that neither the *Culbreth* rule (*In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23]) nor section 654 prohibits the imposition of multiple enhancements for weapons use under section 12022.3 (*People* v. *Blevins* (1984) 158 Cal.App.3d 64, 68 [204 Cal.Rptr. 124]; see generally *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 627-630 [233 Cal.Rptr. 645]) or great bodily injury under section 12022.8 (*People* v. *McElrath, supra,* 175 Cal.App.3d 178, 188). ■ Thus Dobson's concern is not really with whether the enhancements for great bodily injury and weapons use can be imposed, but rather whether those enhancements can be imposed more than once by attaching them to the sex offenses.

According to the court's analysis of the facts, Dobson completed his sex offenses on Bobbie C. before he attempted to kill her. We must conclude

from the court's statements and its stay of the enhancements on the attempted manslaughter count that the conduct constituting the enhancements occurred during Dobson's efforts to kill the victim and not during the sex offenses. Even though Dobson dragged Bobbie C. into the bushes and hit her before sexually assaulting her the court impliedly found that this conduct committed without weapons did not constitute the infliction of great bodily injury under either sections 12022.7 or 12022.8. Because Dobson was no longer committing acts defined as offenses in section 288a, subdivision (c) or section 261, subdivision (2) the enhancements for inflicting great bodily injury and weapons use were unrelated to the sex offenses and accordingly there was no factual basis to attach the enhancements to those offenses.

■ The People's response to this factual argument is that the law does not always view the completion of a criminal offense as that moment in time when the physical conduct constituting the offense has ended. For example the appellate court in *People* v. *Johnson* (1980) 104 Cal.App.3d 598 [164 Cal.Rptr. 69] explained that the defendant's infliction of great bodily injury on a witness during the defendant's attempt to escape were acts occurring in the commission of the crime of receiving stolen property because like burglary and robbery that crime was not completed "until the felon ha[d] won his way to a place of temporary safety. (*People* v. *Carroll* (1970) 1 Cal.3d 581, 585 . . . ; see also, *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 726 . . . ; *People* v. *Walls* (1978) 85 Cal.App.3d 447, 453-454 . . . .)" (*People* v. *Johnson, supra,* 104 Cal.App.3d at p. 608.) We reject this argument for the following reasons.

There are obvious factual differences between crimes involving thefts of property and the commission of sex offenses. Whether these factual differences are sufficient to distinguish the respective offenses is debatable. For policy reasons, however, the completion of the sex offense has been narrowly defined. A narrow definition of a sex offense avoids the proscription of section 654 and permits the imposition of multiple punishment for the sex offender who commits multiple offenses against a single victim. *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63] held that "[a] defendant who attempts to achieve sexual gratification by committing a number of base criminal *acts* on his victim is substantially more culpable than a defendant who commits only one such act." (At p. 553, italics added.) Accordingly the California Supreme Court declined "to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such *act.*" (*Ibid.,* italics supplied.)
■ Thus while we can empathize with the court's effort to tailor an appropriate sentence for Dobson's heinous conduct the imposition of dual enhancements attached to the sex offenses incorrectly assumed the sex offenses were continuing at the time of the attempted manslaughter, a view

contrary to the established law on this issue. To increase the scope of a sex offense here in order to increase punishment in this case would have the ultimate effect of reducing punishment in other sex offender cases because it would require the application of section 654 to such continuing conduct even though that conduct might constitute different sex offenses. Such a definition is contrary to the finiteness of the *act* contemplated in *People* v. *Perez, supra,* and the increased punishment deemed appropriate for the sex offender who commits multiple offenses against a single victim.

Moreover, to allow multiple sentencing for the enhancements in this case would permit the imposition of multiple enhancements against the sex offender in *any* case if the offender injured a person other than his rape victim in attempting to escape. We believe such a holding would ignore the legislative intent underlying section 654. Pursuant to such a holding a prosecutor would have the option of charging the defendant with an assault on the third person plus a great bodily injury enhancement on that person or attach the great bodily injury enhancements to the earlier completed sex offenses allowing for multiple punishments for the enhancement depending on the number of earlier sex offenses. To permit such charging allegations would increase punishment not because of injuries to the victim but to another person and would materially enlarge the scope of section 654. We conclude that in order to decide this case in accordance with the legislative purpose underlying section 654 and consistent with precedent defining the scope of sex offenses, the enhancements here must be attached to the attempted manslaughter and not to the earlier sex offenses. In light of our decision the trial court on remand may wish to lift its stay of the section 12022.7 enhancement to Dobson's conviction of attempted manslaughter. We therefore remand for resentencing.

## II

Dobson next contends the court violated section 654 in imposing full term consecutive sentences for oral copulation and rape. Consecutive sentences were imposed because Dobson was on probation when he committed the crimes (Cal. Rules of Court,[2] rule 421(b)(4)), had performed unsatisfactorily on probation (rule 421(b)(5)) and, the two sex offenses involved separate acts of violence or threats of violence (rule 425(a)(2)).

Dobson argues rule 421(b)(4) applies only to felony probation and he was on probation for a misdemeanor. He argues the Legislature must have intended it apply only to felony probation because it applied the factor to a defendant on "probation or parole," and parole only applies to felonies. Rule 421(b)(4) is unambiguous. It is not limited to felony probation.

---

[2] All rule references are to the California Rules of Court.

■ When a statute is clear on its face, we cannot add a term under the guise of statutory interpretation. (*Vallerga* v. *Dept. of Alcoholic Bev. Control* (1959) 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909].) ■ Rule 421(b)(4) was an appropriate factor to consider in imposing consecutive sentences.

Dobson argues rule 421(b)(5) does not apply to poor performance on probation resulting from conviction of the crimes here. While Dobson is no doubt correct as a matter of law, in referring to both his being on probation and his poor performance on probation, the court was stating one rather than two reasons for imposing consecutive sentences. As a result, the principle of law argued by Dobson has no effect on the sentencing.

■ Finally, Dobson argues the record does not support application of rule 425(a)(2). However, during the oral copulation, he held the victim by the hair and threatened to kill her. During the rape, he held the victim around the neck choking her and again threatened to kill her. While apparently recognizing the facts here fall within rule 425(a)(2), Dobson argues its application is inappropriate because he engaged in a single period of aberrant behavior (rule 425(a)(3)). Subparts (a)(2) and (a)(3) of rule 425 are merely two factors the trial court should consider in determining whether to impose consecutive or concurrent sentences. For the court to abuse its discretion in applying these criteria, it must reach a result beyond the scope of reason. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) The trial court here did not abuse its discretion in imposing consecutive sentences for the two sex crimes.

### DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the case remanded to permit resentencing in accordance with this opinion.

Work, J., and Staniforth, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 26, 1989. Kaufman, J., was of the opinion that the petition should be granted.

---

* Retired Associate Justice of the Court of Appeal setting under assignment by the Chairperson of the Judicial Council.