[No. E018229. Fourth Dist., Div. Two. July 10, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR LAWRENCE AKINS, Defendant and Appellant.

**COUNSEL**

Harvey L. Goldhammer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia Garcia and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendant was charged in an amended information with two counts of first degree residential robbery, in concert with two or more persons, in violation of Penal Code sections 211 and 213, subdivision (a)(1)(A),[1] two counts of assault by means of force likely to cause great bodily injury in violation of section 245, subdivision (a)(1), two counts of first degree residential burglary in violation of section 459,[2] and one count of second degree commercial burglary in violation of section 459.[3] With respect to each count, it was alleged that defendant committed each offense for the benefit of, and at the direction of, a criminal street gang, with the specific intent to promote and further criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1). It was also alleged that defendant had suffered one prior conviction within the meaning of section 667.5, subdivision (b).

After a trial by jury, defendant was found guilty on all counts. Furthermore, the court found both the prior conviction and the gang allegations to be true. Defendant was sentenced to a total term of 16 years and 8 months. The court imposed two years on the criminal street gang enhancement on count I[4] and eight months on the criminal street gang enhancement on count IV.[5] The court stayed the criminal street gang enhancements on the other five counts.

Defendant contends first that there was insufficient evidence presented at trial to justify the jury's verdict that defendant participated in the crimes against Peter Martin.[6] Second, defendant claims that the court's imposition of two criminal street gang enhancements violated section 654. We do not agree with either of defendant's claims and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 1995, at 11:15 p.m., defendant Damean Brown and Antwan Mims entered a Circle K store, went to the beer section, took three bottles of Olde English brand "500" malt liquor and two bottles of Night Train, and walked out of the store without paying for them. A videotape from the store security captured the entire event.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Counts I-III are crimes against Peter Martin. Counts IV-VI are crimes against Ernie Simpson.

[3] Count VII is a robbery of a Circle K convenient store.

[4] Residential robbery of Peter Martin.

[5] Residential robbery of Ernie Simpson.

[6] Counts I-III.

Shortly after 12 a.m. on May 9, 1995, defendant and others broke into the apartment of Ernie Simpson. As Simpson walked toward the living room, defendant came through the front door and started hitting Simpson on the head with a rock. Defendant had on a blue plaid shirt, a blue bandanna over his face and his hair pulled back in a ponytail. Defendant then forced Simpson facedown on the bed yelling, "Get down on the bed, bitch. Face down on the bed." Someone climbed on Simpson's back to hold him down on the bed and defendant continued to yell, "Where is your money, bitch? . . . [¶] . . . Don't look. I'll cut you, bitch. I'll stick you if you look." At some point, after all of the intruders had left, Simpson drove to a friend's house to call the police. The police met Simpson back at his apartment and, about an hour later, took Simpson to a field identification where he identified defendant as the man who assaulted him. Defendant was wearing the same clothes as when he assaulted Simpson. Simpson subsequently discovered that his wallet and a case of Henry Weinhard's brand beer had been taken. Due to the attack, Simpson suffered a large cut on his left cheek, his left eye was swollen shut, and he had several large bumps on his head.

In the early morning hours of May 9, 1995, shortly after the Simpson robbery and assault, Maria Sisante heard excited voices outside of her apartment. She looked out her window and saw a group of men hiding at the bottom of the steps, who then began to climb the steps while putting blue bandannas over their faces, so she called 911. One of the men that Sisante saw was wearing a blue plaid jacket and had a ponytail. Sisante saw, through the peephole of her door, that the men were acting like an assembly line by handing things, person-to-person, out of the apartment right across from her. She also heard the name "Demitrius" spoken. Demitri James, also known as Demitrius, is a close friend and associate of defendant.

Peter Martin lived in the apartment right across from Sisante. That night, Martin had been out drinking and had fallen asleep on the couch in his living room. He never saw his attackers but felt something hit his forehead and heard the sound of breaking glass as one of the assailants hit Martin over the head with a bottle of Henry Weinhard's brand beer. Prior to this robbery, there had been no Henry Weinhard's brand beer in the apartment.

Officer Ili responded to the robbery at Martin's apartment and saw defendant walking toward him. Defendant was nervous, perspiring, breathing hard and matched the description given of the robber. Subsequently, defendant was detained. Officer Jaekel also responded to the robbery and detained Antwan Mims because he matched the description of the suspects. Two game cartridges, remote alarm keys stolen from Martin's apartment and a bandanna were found in Mims's jacket. Officer Jaekel also saw property

lying in the shubbery on the side of the walkway and a bandanna near the stairwell outside the apartment.

Early in the morning of May 9, 1995, Sisante was taken to a field identification where she identified defendant as one of the men she saw participating in the robbery. She recognized him by his clothes and his ponytail.

Damean Brown admitted he participated in the Martin and Simpson robberies, as well as the burglary of the Circle K.

After the jury's verdict, a gang expert testified that defendant and Damean Brown were members of the 1200 Blocc Crips and that Antwan Mims was a member of the Georgia Street Mob which consists of younger gang members who can move into the 1200 Blocc Crips when they prove themselves. The gang expert testified that the beer robbery at Circle K and the robberies of Martin and Simpson were for the benefit of, in association with, or at the direction of, the 1200 Blocc Crips.

## DISCUSSION

I. *Sufficiency of evidence to support the jury's finding that defendant committed the crimes against Peter Martin.*

██ Due to an alleged total lack of evidence to support the convictions for the Martin crimes, defendant urges us to reverse those three verdicts. We decline the invitation. Defendant bears a massive burden in claiming insufficient evidence to sustain his convictions because our role on appeal is a limited one. ██ Our standard of review is to "examine the entire record in the light most favorable to the prosecution, presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Price* (1991) 1 Cal.4th 324, 462 [3 Cal.Rptr.2d 106, 821 P.2d 610], fn. omitted; *People* v. *Jackson* (1989) 49 Cal.3d 1170, 1199-1200 [264 Cal.Rptr. 852, 783 P.2d 211 ].) Furthermore, if the verdict is supported by substantial evidence, we are bound to give due deference to the jury and not retry the case ourselves. (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

Defendant's hurdle to secure a reversal is just as high even when the prosecution's case depends on circumstantial evidence. The "sufficiency of the evidence" standard of review is the same in cases in which the People rely mainly on circumstantial evidence. (*People* v. *Stanley* (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *People* v. *Bean* (1988) 46

Cal.3d 919, 932 [251 Cal.Rptr. 467, 760 P.2d 996].) " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' " (*Stanley*, *supra*, 10 Cal.4th at p. 793, quoting *People* v. *Bean*, *supra*, 46 Cal.3d at pp. 932-933.)

■ In the case at hand, viewing the entire record in the light most favorable to the prosecution, there is overwhelming circumstantial evidence to tie defendant to the Martin crimes. Defendant, Damean Brown, and Antwan Mims stole beer from a Circle K. Later that same night, defendant and others found an occupied apartment and defendant attacked the occupant (Simpson) with a rock. Simpson identified defendant's blue plaid shirt,[7] blue bandanna and ponytail. The modus operandi of the Simpson robbery was the same as that used in the Martin robbery. Again, an occupied apartment was chosen. After robbing Simpson, defendant and others then went to Martin's apartment where defendant was seen by Martin's neighbor, Maria Sisante. Sisante saw defendant pull a blue bandanna over his face and saw his ponytail. Further, as in the Simpson robbery, the victim was smashed in the head with a heavy object. The heavy object used to hit Martin was a bottle of Henry Weinhard's brand beer, which, oddly enough, was the same type of beer stolen from Simpson.[8] The police then caught defendant nervous, perspiring, and breathing hard on the walkway outside of the apartment. Antwan Mims was also caught outside the apartment with stolen goods and Damean Brown admitted to the Martin robbery.

Viewing this circumstantial evidence as a whole, the jury was reasonably justified in finding that defendant participated in the crimes against Peter Martin, just as he participated in the crimes against Ernie Simpson and the Circle K store. The jury verdict is supported by substantial evidence.

II. *Imposition of two criminal street gang enhancements was proper.*

■ Defendant urges us to stay one of his sentence enhancements under section 186.22, subdivision (b)(1) because the imposition of two sentence enhancements violates section 654.[9] We decline the invitation.

We recognize there is a split of authority concerning the application of section 654 to sentence enhancements. Some appellate districts have held

___

[7]The same shirt visible in the videotape from the Circle K robbery.

[8]Also, there was no Henry Weinhard's brand beer in Martin's apartment prior to the invasion.

[9]Section 654 reads in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

that section 654 prohibits multiple enhancements. (*People* v. *Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr. 423]; *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 817 [179 Cal.Rptr. 726] [Section 654 prohibited imposition of two great bodily injury enhancements from a single act of the defendant committed on one victim.].) Other appellate districts hold that section 654 does not apply to enhancements. (*People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633] [A single robbery conviction and single resulting period of incarceration may properly, and consistent with the legislative intent, be used both to upgrade a subsequent petty theft from a misdemeanor to a felony under section 666, and to enhance the sentence under section 667.5, subdivision (b).]; *People* v. *Warinner* (1988) 200 Cal.App.3d 1352, 1355 [247 Cal.Rptr. 197] [Section 654 is inapplicable to enhancements because they prescribe increased punishment.].) Our own Supreme Court has declined to rule on the issue. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) However, nearly all of the cases that have applied section 654 to limit enhancements have done so in the context of a single act committed against a single victim.

The Legislature enacted section 186.22, subdivision (b)(1) as part of the California Street Terrorism Enforcement and Prevention Act (STEP Act). (§ 186.20 et seq.) As relevant here, the STEP Act prescribes certain penal consequences for crimes committed "for the benefit of, at the direction of, or in association with" a criminal street gang. (§ 186.22.)[10] The Legislature found that ". . . the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods." (§ 186.21.) The legislative intent in enacting this chapter was to eradicate criminal street gang activity by focusing on and punishing ongoing patterns of criminal gang activity. (*Ibid.*)

■   Section 654 provides that even though an act violates more than one statute and thus constitutes more than one crime, a defendant may not be punished multiple times for that single act. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611]; *People* v. *Liu* (1996) 46 Cal.App.4th 1119, 1134 [54 Cal.Rptr.2d 578].) The "act" which invokes section 654 may be a continuous " 'course of conduct' . . . comprising an indivisible transaction . . . ." (*Liu, supra,* 46 Cal.App.4th at p. 1135.) "The divisibility of a course of conduct depends upon the intent and objective of the defendant. . . . [I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely

---

[10]Specifically, section 186.22, subdivision (b)(1) provides for "an additional term of one, two, or three years" for any person convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, . . ."

incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Ibid.*; *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 189-193 [251 Cal.Rptr. 40].)

Defendant asserts that the Martin and Simpson robberies were part of a "continuous course of conduct . . . unified by the single intent to benefit and further the street gang." We disagree. "The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]" (*People* v. *Liu, supra*, 46 Cal.App.4th 1119, 1135-1136; *People* v. *Evers* (1992) 10 Cal.App.4th 588, 604 [12 Cal.Rptr.2d 637] [Trial court's determination of single or multiple criminal objectives will not be reversed on appeal unless unsupported by the evidence presented at trial.].)

In the case at hand, the evidence was sufficient to support the trial court's finding that imposing two separate sentence enhancements was proper. Although defendant may have had one objective to benefit his gang, the robberies and assaults of Mr. Simpson and Mr. Martin involved separate victims, were separated by time and distance, and were separate robberies. Pursuant to *People* v. *Liu, supra*, 46 Cal.App.4th 1119, even though these violations shared common acts or were part of the same course of conduct, the court may impose separate punishment for independent violations. Also, our Supreme Court held in *People* v. *King* (1993) 5 Cal.4th 59, 75-78 [19 Cal.Rptr.2d 233, 851 P.2d 27] that consecutive sentence enhancements under section 12022.5 (use of firearm in commission of felony) are proper for each felony committed in an indivisible transaction and are not subject to 654. Thus, even taking defendant's argument that the crimes constituted a continuous course of conduct comprising an indivisible transaction, the two gang enhancements were proper because there were two independent victims and two distinct robberies.

First, acts of violence against separate victims may be separately punished. (*People* v. *Champion* (1995) 9 Cal.4th 879, 934-935 [39 Cal.Rptr.2d 547, 891 P.2d 93] [When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons, notwithstanding section 654.]; *People* v. *Price, supra*, 1 Cal.4th 324, 492 [Section 654 does not preclude separate punishment for crimes of violence committed against separate victims.]; *People* v. *Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63] [Multiple acts of violence committed against separate victims may be separately punished, even when

they are for the same intent and during the same transaction.].) Both Martin and Simpson were assaulted for the benefit of and at the direction of a criminal street gang. The trial court found no single plan or single intention on the part of defendant that would even casually link the two victims. The home of the first victim (Simpson), had been checked out earlier in the day and was invaded in order for the gang to gain more prestige and power within the community. The second victim (Martin) was randomly selected "because the light was on." They were two separate victims which warranted separate punishment at the trial level.

Second, the two robberies were committed at different locations, separated by time, and were not subject to section 654. (*People* v. *Massie* (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869] [A defendant may not bootstrap himself into section 654 by claiming a series of robberies constituted a single course of conduct with one intent and objective.]; *People* v. *Samuels* (1996) 42 Cal.App.4th 1022, 1026 [50 Cal.Rptr.2d 157] [Defendant committed three separate burglaries of three separate victims in three separate locations. Separate punishment for these crimes is entirely appropriate under section 654.]; *People* v. *Dominick* (1986) 182 Cal.App.3d 1174, 1209 [227 Cal.Rptr. 849] [Separate great bodily injury enhancements proper because assaults against victim occurred at different times.].) Not only did defendant assault separate victims but the assaults and robberies occurred at different times. Additionally, some basis exists for multiple criminal intent. After the Simpson robbery, the defendant and others took the Henry Weinhard's brand beer to a nearby school and drank it. It was only then, at the school, that they decided to rob Martin's apartment after seeing his light on. After seeing the light on in Martin's apartment, defendant formed a separate and distinct criminal objective to rob again. Accordingly, the two robberies were not subject to section 654.

Since the underlying offenses, robbery and assault, were not subject to section 654 because they are evidence that defendant's criminal intent was multiple, the two gang enhancements pursuant to section 186.22, subdivision (b)(1) are also not subject to section 654. The Martin and Simpson robberies were distinct events, isolated by time and distance. Two independent victims were assaulted for the benefit of and at the direction of the criminal street gang. Both individual assaults made the gang more powerful in the eyes of rival gang members. Two independent robberies were also committed for the benefit of and at the direction of the criminal street gang. Each separate act was committed to enhance the gang and to put the gang one up on the community. To hold otherwise, that the two gang enhancements violated section 654, would violate section 654's purpose to ensure that defendant's punishment will be commensurate with his culpability.

Separate punishment enhancements for the Simpson and Martin crimes is appropriate and is consistent with the legislative intent to punish and deter criminal gang activity pursuant to section 186.22, subdivision (b)(1). As mentioned at the outset, the Legislature in 1988 enacted the STEP Act. (§ 186.20 et seq.) Underlying the enactment of this chapter was a legislative conclusion that ". . . California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods." (§ 186.21.) To combat the problem, the Legislature declared its intent " 'to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs.' " (*People* v. *Gardeley* (1996) 14 Cal.4th 605, 609, 615 [59 Cal.Rptr.2d 356, 927 P.2d 713].) The Legislature, in enacting section 186.22, subdivision (b)(1), believed that one way to seek the eradication of ongoing criminal gang activity was to enhance the penalties for crimes committed for the benefit of a criminal street gang. Also, the Legislature believed that existing laws should be utilized to the fullest extent possible to actively pursue innovative programs to deter criminal gang activity.

Thus, we conclude that applying the criminal street gang enhancement to both the Simpson and Martin robberies holds defendants accountable for ongoing gang activity and is consistent with the legislative intent of section 186.22, subdivision (b)(1).

### DISPOSITION

Accordingly, the judgment is affirmed.

McKinster, J., and Gaut, J., concurred.