[No. A083799. First Dist., Div. One. Aug. 27, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CORNELIUS JOSEPH NUBLA, Defendant and Appellant.

## COUNSEL

Tamara P. Holland, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David Druliner, Chief Assistant Attorney General, Ronald A. Bass Assistant Attorney General, Rene A. Chacon and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—On the morning of December 20, 1996, defendant and appellant Cornelius Joseph Nubla, apparently under the influence of long-term abuse of methamphetamine and unhappy because his wife, Melinda Nubla, wanted to separate from him, got into an argument with her. The argument escalated to the point that Ms. Nubla attempted to telephone the police. Appellant pulled the telephone from her hand and threw it across the room. Ms. Nubla began to scream for help. Appellant put his hand over her mouth and pushed her facedown onto the bed, causing her nose to bleed. Appellant pushed something cold and hard into the back of Ms. Nubla's head. He then turned her faceup and put a gun in her mouth, cutting her lip and chipping her tooth. He told her he wanted her to look at the gun and that it was cocked. He said that if he could not have her no one could. After a few moments appellant took the gun out of Ms. Nubla's mouth. He told her to shoot him. He got up a few minutes after that, went into the bathroom and apparently took a handful of pills. A short time later appellant began to stumble around the room, enabling Ms. Nubla to get away. She called the police who took appellant into custody. Ms. Nubla later found a baggie of methamphetamine in appellant's jacket. She gave the baggie to the police.

The matter was tried to a court which found appellant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (b)), corporal injury on a spouse (Pen. Code, § 273.5), false imprisonment (Pen. Code, § 236) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The court also found true allegations that appellant personally had used a gun in the commission of the first three offenses.

The court later determined that appellant might be addicted to methamphetamine. Welfare and Institutions Code section 3051 provides that when it appears to the judge that a defendant may be addicted to narcotics, "the judge shall suspend the execution of the sentence and order the district

attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the [California Rehabilitation Center], unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section." Because appellant had used a gun in the commission of the offenses, it was questionable that he would be eligible for commitment to the California Rehabilitation Center (CRC). The court, however, stated its belief that CRC occasionally accepted individuals notwithstanding their use of weapons. As appellant had no criminal history, "has been a good citizen" and suffered from a "horrible methamphetamine addiction," the court suggested that the defense explore the possibility of commitment to CRC.

Defense counsel learned from a staff member at CRC that appellant might be admitted to the program. The parties thereafter stipulated to appellant's addiction and, in accordance with the procedures set forth in Welfare and Institutions Code section 3051, the court on September 19, 1997, imposed a sentence of six years in state prison comprised of the mitigated term of three years on the assault conviction, concurrent mitigated terms on the corporal injury and possession of methamphetamine convictions plus concurrent three-year enhancements for the use of a gun in connection with the first two of those offenses. The court also imposed the mitigated term on the false imprisonment conviction and a three-year enhancement for the personal use of a gun, but stayed that sentence pursuant to Penal Code section 654. The court then, also in accordance with Welfare and Institutions Code section 3051, suspended execution of the sentence and ordered appellant committed to CRC.

On April 10, 1998, after appellant had been committed to CRC for seven months, the CRC warden wrote that he had determined that appellant was not a fit subject for CRC commitment because of his "proneness for violence [as evidenced by] the circumstances of his current convictions." Welfare and Institutions Code section 3053, subdivision (a) provides that if after commitment it is concluded that the defendant is not a fit person for commitment, the Director of Corrections "(a) . . . shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted." Where, as here, the defendant originally was committed pursuant to Welfare and Institutions Code section 3051, section 3053, subdivision (c) provides: ". . . [the] criminal court shall then promptly set for hearing the matter of the sentencing of the defendant upon the conviction which subsequently resulted in the original civil commitment." Appellant therefore was returned to the trial court. He moved

for modification of his sentence, but the court denied the motion, taking no position on its merits, but finding that it lacked jurisdiction to grant appellant's request. On June 26, 1998, the court ordered the execution of the previously imposed sentence, and appellant was committed to state prison.

This appeal followed.

## I.

### *Modification of Sentence Following Rejection From CRC*

In May 1995, this court decided *People* v. *Barnett* (1995) 35 Cal.App.4th 1 [41 Cal.Rptr.2d 279], cited here by appellant in support of his argument that the trial court had the power to modify his sentence after his rejection by CRC. In *Barnett* we declined to consider the validity of a restitution fine imposed by the trial court, finding the appeal to be premature. The trial court had imposed sentence, including the fine, but had suspended its execution and had ordered the defendant committed to CRC. We concluded that the sentence was in the nature of an interim sentence that might be modified when the defendant was returned from CRC to the sentencing court.

In so concluding, we found that the initiation of CRC commitment proceedings leads to one of three possibilities. First, it might be determined prior to commitment to CRC, that the defendant was not in fact an addict or otherwise a candidate for CRC. In such cases, Welfare and Institutions Code section 3051 provides that "[t]he court may, unless otherwise prohibited by law, modify the sentence or suspend the imposition of the sentence." Second, the defendant might be committed to CRC "for confinement in the facility until a time that he or she is discharged." Upon discharge from CRC the trial court, again, may, unless otherwise prohibited by law, modify the sentence, dismiss the criminal charges of which such person was convicted, or suspend further proceedings, as it deems warranted in the interests of justice. (Welf. & Inst. Code, §§ 3200, subd. (b), 3201, subd. (c).) The third possibility—that which occurred here—is that the defendant is committed to CRC, but later is rejected. In such a case the Welfare and Institutions Code does not specifically provide that the court may modify the sentence. Instead, and as noted above, section 3053, subdivision (a), provides that the defendant shall be returned to the court "for such further proceedings on the criminal charges as that court may deem warranted."

We stated: "Although section 3053 does not specify that the sentencing court has the same broad powers to modify the prior sentence as is expressly

conferred by sections 3051, 3200 and 3201, we can conceive of no reason why a court would be entitled to modify the sentence if it is determined that the defendant is not a candidate for CRC before commitment, but not if it is determined that the defendant is unfit after he or she has been committed to CRC. Presumably the Legislature views an involuntary termination as a discharge from commitment which then empowers the court to enter a sentence appropriate to the circumstances. The only limitation on sentencing after discharge or termination from commitment is that a defendant may not be sentenced to a greater term than the term in the sentence originally imposed and suspended. (*People* v. *Scott* [(1984)] 150 Cal.App.3d 910, 916-920 [198 Cal.Rptr. 124].)" (*People* v. *Barnett, supra,* 35 Cal.App.4th at p. 4.)

■ Two years later the Supreme Court decided *People* v. *Howard* (1997) 16 Cal.4th 1081 [68 Cal.Rptr.2d 870, 946 P.2d 828], a case in which the defendant was sentenced, execution of sentence was suspended and the defendant placed on probation. The court held that where probation is revoked, the trial court lacks jurisdiction to modify the unexecuted sentence prior to commitment. Its power is limited to postcommitment modification pursuant to Penal Code section 1170, subdivision (d).[1] Respondent argues here, as the district attorney argued in the trial court, that *Howard* effectively overruled our discussion in *Barnett,* and should be read as recognizing that as a general rule the sentencing court has no power to modify any sentence imposed but not executed. Our reading of *Howard,* however, and of *People* v. *Karaman* (1992) 4 Cal.4th 335 [14 Cal.Rptr.2d 801, 842 P.2d 100], discussed and distinguished by the court in *Howard,* convinces us that in the present case the trial court retained jurisdiction to modify its sentence up until the actual commencement of the execution of the sentence.

■ In *People* v. *Karaman,* the trial court sentenced the defendant, and the sentence was entered in the minutes of the court. The court, however, stayed execution of sentence for one week to permit the defendant to put his personal affairs in order prior to commencement of the execution of the sentence. At the conclusion of the one-week period, the court held a further hearing at which it modified the sentence, reducing it by striking an enhancement imposed for the personal use of a firearm. The district attorney appealed, and the Court of Appeal determined that the trial court lost

---

[1]Penal Code section 1170, subdivision (d) provides in relevant part: "When a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."

jurisdiction to modify its sentence upon entry of the judgment in the minutes of the court. The Supreme Court disagreed. It found that "[u]nder the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced. [Citations.] If, however, the trial court 'retains in itself the actual or constructive custody of the defendant and the execution of his sentence has not begun,' the court may vacate and modify the sentence. [Citation.]" (*People* v. *Karaman, supra,* 4 Cal.4th at p. 344.) When a judgment other than death has been pronounced, and the judgment is for incarceration in a state prison, execution of the judgment does not occur until the commitment document is transferred to the proper officer and the defendant is delivered into that officer's custody. (*Id.* at pp. 344-345.) The court noted that earlier cases had established that the trial court has no power to increase the punishment after judgment has been rendered. The reason, however, is not because the court has lost jurisdiction to modify its sentence, but because increasing the penalty subjects the defendant to double punishment for the same offense in violation of the federal and state Constitutions. The court concluded that although a valid sentence may not be *increased* after formal entry in the minutes, the trial court retains the power to mitigate the sentence prior to commencement of execution of that sentence; i.e., up until the defendant has been delivered to the appropriate official along with the commitment document. (*Id.* at pp. 348-350.)

In *People* v. *Howard, supra,* 16 Cal.4th 1081, the court limited *Karaman*, but not in any way that affects the outcome of the present case. The trial court in *Howard* imposed sentence, but suspended its execution and placed the defendant on probation. The defendant later violated the terms of her probation. The court accordingly revoked the defendant's probation and ordered into execution the sentence it earlier had imposed. Penal Code section 1203.2, subdivision (c), expressly provides that "if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the *judgment shall be in full force and effect.*" (Italics added.) California Rules of Court, rule 435(b)(2) similarly provides, "If the execution of sentence was previously suspended, the judge shall order that the *judgment previously pronounced be in full force and effect* and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment." (Italics added.) The court in *Howard* concluded that section 1203.2, subdivision (c), and rule 435(b)(2), by their terms, limit the trial court's power to modify a sentence where the sentence had been imposed but its execution was suspended pending a term of probation. Under section 1203.2 and rule 435, if the court imposed sentence, but suspended its execution pending probation, and later revokes probation, the court must order the previously imposed sentence into effect. (*People* v. *Howard, supra,* 16 Cal.4th at pp. 1087-1088.)

The *Howard* court recognized that its conclusion might be viewed as inconsistent with its earlier holding in *Karaman.* It characterized the *Karaman* holding as stating "a narrow exception to the general rule depriving the court of authority to modify a sentence once it has been imposed and entered in the clerk's minutes." (*People* v. *Howard, supra,* 16 Cal.4th at p. 1088.) The court also stated, however, that in *Karaman* it had "found no authority. . . forbidding a court from *reducing* a sentence previously imposed but temporarily stayed, if the sentence had not yet been executed by delivery of a commitment order." (*Id.* at p. 1089.) The court appeared to be concerned by the idea that the trial court might be able to modify a judgment that had become final, in terms of appealability, at an earlier date, and emphasized that in *Karaman* the execution of sentence had been stayed for only a short period of time. (*Id.* at pp. 1089-1090, 1095.) The court, however, did *not* hold that courts that impose judgment, suspend execution of judgment and place defendants on probation, lose jurisdiction to modify the judgment because of the passage of time. Indeed, it found that even in probation cases, the trial courts retain jurisdiction to reduce a previously imposed but suspended sentence at any time prior to the defendant's rearrest. (*Id.* at pp. 1092-1093.) Again, the court in *Howard* concluded that the rule enunciated in *Karaman* did not and could not apply in probation cases because Penal Code section 1203.2, subdivision (a) and California Rules of Court, rule 435(b), expressly provide that upon revocation of probation, the previously imposed judgment is to be in full force and effect. (16 Cal.4th at p. 1093.)

*People* v. *Howard* therefore does not stand for the proposition that trial courts generally lose the power to modify a sentence once the sentence has been imposed but before sentence has been executed. It holds only that in the most common of those situations in which sentence has been imposed but execution of sentence has been suspended—probation proceedings—the power of the court to modify the previously imposed sentence is cut off by specific statutory and administrative mandate.

 CRC proceedings are similar to probation proceedings in that the sentencing court retains jurisdiction over the defendant during the period when the defendant is committed to CRC. In contrast to probation revocation proceedings, however, there is no statutory or administrative mandate that the previously imposed judgment be in full force and effect upon the defendant's rejection from CRC. Welfare and Institutions Code section 3053 requires only that the defendant be returned to the court in which the case originated "for such further proceedings on the criminal charges as that court may deem warranted," and that the "court shall then promptly set for hearing the matter of the sentencing of the defendant upon the conviction which subsequently resulted in the original civil commitment." We cannot find in

these provisions an expression of legislative intent to limit the trial court's power to modify the previously imposed sentence similar to the legislative mandate set forth in Penal Code section 1203.2, subdivision (a). We therefore conclude that the analysis and rule stated by the court in *People* v. *Howard* does not apply to CRC proceedings, and, following *Karaman,* hold that the trial court here had jurisdiction to mitigate, but not to increase, appellant's sentence.

Respondent contends that even if the trial court retained jurisdiction to modify its sentence, remand is unnecessary here both because the trial court had no option to reduce the already mitigated sentence and because the record discloses that the court would not have modified its sentence even if it believed it had the power to do so. The record, however, discloses that the trial court felt appellant to be a candidate for probation except that his addiction was such that the court did not believe he would be able to abstain from drug abuse, and therefore would not be able to abstain from drug-induced behavior. It is reasonable to assume that appellant remained free from drugs from the time of his arrest, on December, 20, 1996, to the date sentence was executed, June 26, 1998, and that he had received at least some benefits from his commitment to CRC. Appellant's performance while at CRC is not a part of the appellate record. Under the circumstances, we cannot say with certainty that the trial court would not have imposed probation had it been given the option of doing so. Indeed, the court was careful to take no position on what it would have done had it believed it had the power to modify appellant's sentence.[2]

It follows that the judgment must be reversed and the matter remanded to the trial court so that it can exercise its discretion, if it so chooses, to modify appellant's sentence.

---

[2]Respondent points out that the court was aware that it had the power, under Penal Code section 1170, subdivision (d), to recall the sentence and resentence appellant in the same manner as if he had not been previously sentenced. (And see *People* v. *Howard, supra,* 16 Cal.4th 1081, 1093.) Respondent argues that it must be assumed that because the court did not exercise that power, it would not have modified appellant's sentence during the precommitment proceedings. The appellate record does not reflect what the court did or did not do after June 26, 1998. It does reflect that the court suggested to defense counsel that "if you feel that you have some basis for a motion for—for the Court to consider exercise of its powers to recall the commitment under [Penal Code section 1170, subdivision (d)], you can file such a motion." Penal Code section 1170 emphasizes the promotion of uniformity of sentencing. From the court's comments, it seems that it may have felt that it would not be appropriate to exercise its power under section 1170, subdivision (d), absent some evidence or claim of disparity between appellant's sentence and sentences imposed in similar situations.

## II.

### *Penal Code Section 654*

■ "[Penal Code s]ection 654 provides that even though an act violates more than one statute and thus constitutes more than one crime, a defendant may not be punished multiple times for that single act. [Citations.] The 'act' which invokes section 654 may be a continuous ' "course of conduct" . . . comprising an indivisible transaction . . . .' [Citation.] 'The divisibility of a course of conduct depends upon the intent and objective of the defendant. . . . [I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citations.]" (*People* v. *Akins* (1997) 56 Cal.App.4th 331, 338-339 [65 Cal.Rptr.2d 338].)

■ The trial court here, cognizant of Penal Code section 654, stayed sentence on the false imprisonment offense. Appellant contends, however, that the court erred by imposing separate sentences on the offenses of assault with a deadly weapon and corporal injury to a spouse, claiming that both offenses were part of an indivisible course of conduct and thus subject to the limitations of Penal Code section 654.

Whether the defendant entertained multiple criminal objectives is a factual question for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to sustain them. (*People* v. *Akins, supra,* 56 Cal.App.4th at p. 339.) There is no question here but that appellant committed several acts of violence against his wife. He pushed her onto the bed, causing her nose to bleed. He pushed a gun into the back of her head. He turned her over and pushed the gun into her mouth. ■ Appellant's offenses, although not sexual in nature, are somewhat analogous to sex offenses in that several similar but separate assaults occurred over a period of time. In connection with sex offenses it has been established that each sexual assault may be viewed as a separately punishable criminal act, notwithstanding that all the offenses arguably were done to obtain sexual gratification. The Supreme Court observed, "that such a 'broad and amorphous' view of the single 'intent' or 'objective' needed to trigger [section 654] would impermissibly 'reward the defendant who has the greater criminal ambition with a lesser punishment.' [Citation.] Rather, in keeping with the statute's purpose, the proper view [is] to recognize that a 'defendant who attempts to achieve sexual gratification by committing a number of base

criminal acts on his victim is substantially more culpable than a defendant who commits only one such act.' " (*People* v. *Harrison* (1989) 48 Cal.3d 321, 335-336 [256 Cal.Rptr. 401, 768 P.2d 1078].) The court accordingly found it permissible to conclude that separately punishable acts had occurred when " '[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental' to any other." (*Id.* at p. 336.)

The same analysis, applied here, supports the trial court's ruling. Appellant's act of pushing his wife onto the bed and placing the gun against her head was not done as a means of pushing the gun into her mouth, did not facilitate that offense and was not incidental to that offense. The trial court was entitled to conclude that each act was separate for purposes of Penal Code section 654.

## III.

### Credits

Appellant was excluded from CRC on April 10, 1998, but sentence was not executed until September 26, 1998. He contends that he was entitled to conduct and worktime credits for the full period after his exclusion from CRC, notwithstanding that he remained at the CRC facility for a substantial period of time after his exclusion.

It is settled that a defendant is not entitled to worktime or conduct credits for time served at CRC. (*People* v. *Jones* (1995) 11 Cal.4th 118 [44 Cal.Rptr.2d 164, 899 P.2d 1358]; *People* v. *Guzman* (1995) 40 Cal.App.4th 691, 694 [47 Cal.Rptr.2d 53]; *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528].) A defendant is, however, entitled to Penal Code section 4019 conduct credits from the time of his or her exclusion from CRC for time spent either at CRC or in county jail. (*People* v. *Guzman, supra,* 40 Cal.App.4th at pp. 694-695.) It also has been held that at least in some instances a defendant who has been excluded from CRC is entitled to worktime credits notwithstanding that after exclusion the defendant continues to be held at the CRC institution. In *People* v. *Rodriguez* (1997) 52 Cal.App.4th 560 [60 Cal.Rptr.2d 664], the Fifth Division of this court held that equal protection guarantees required that the defendant there, a person excluded from CRC because of a medical condition, be given worktime credits for time spent at a CRC facility after exclusion. The court noted that authority exists for awarding worktime credits to prison inmates who are unable to participate in a work program through no fault of their own. (See *In re Reina* (1985) 171 Cal.App.3d 638 [217 Cal.Rptr. 535] and *In re Carter*

(1988) 199 Cal.App.3d 271 [244 Cal.Rptr. 648].) The court found, "[o]nce a formal determination was made that Rodriguez was 'not suitable' for CRC, she faced all too familiar administrative delays in arranging transport to the sentencing court and in scheduling a sentencing hearing before the proper sentencing judge. The length of Rodriguez's term of imprisonment should not be adversely affected by the vagaries of inter-county prisoner bus scheduling or changing judicial assignments. She should therefore be awarded custody credits from the time CRC formally notified the court of its determination that she was 'not suitable' and referred her for further proceedings on the suspended criminal charges." (*People* v. *Rodriguez, supra,* 52 Cal.App.4th at p. 565.) The Fifth Division expressly declined to determine if its holding should extend to CRC committees excluded for excessive criminality or other fault-based reasons. (*Id.* at p. 565, fn. 4.) Its reasoning, however, applies equally to exclusions based on "fault." In addition, defendants excluded for fault-based reasons after admission to CRC are in the same general class as those found ineligible for CRC commitment in the first place. It follows that they should be afforded the same treatment as persons found to be ineligible for CRC, and are entitled to worktime credits for any time in custody after exclusion to the same degree as they would be entitled to worktime credits had there been no CRC commitment.

### Conclusion

The judgment is reversed. The matter is remanded to the trial court so that it may exercise its discretion to modify appellant's sentence, if it determines that modification is warranted. The trial court further is directed to recalculate appellant's conduct and worktime credits in accordance with the principles stated above.

Strankman, P. J., and Marchiano, J., concurred.

A petition for a rehearing was denied September 24, 1999.