Filed 4/17/14  P. v. Sanchez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>DANIEL NAMBO SANCHEZ,<br><br>    Defendant and Appellant. | G048436<br><br>(Super. Ct. No. 12NF1080)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed as modified.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Perter Quon, Jr., and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Daniel Nambo Sanchez of two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2); all further statutory references are to this code; counts 1 and 2) and making a criminal threat (§ 422; count 3.) It also found true defendant personally inflicted great bodily injury (§ 12022.7, subd. (e)) as to count 1, and personally used a firearm (§ 12022.5, subd. (a)) as to counts 2 and 3, although it found he did not personally use a firearm during the commission of count 1. The trial court sentenced defendant to seven years in prison, consisting of the middle term of three years on count 2, plus a consecutive four years for his personal use of a firearm.

Defendant contends his conviction under count 1 should be reversed for insufficiency of the evidence. He also asserts the concurrent sentence ordered on count 3 and its accompanying enhancement for personal use of a firearm should have been stayed under section 654, and that the court improperly imposed a $4,200 restitution fine on both count 1, for which a stay was imposed, and count 3, for which he claims a stay should have been imposed. The Attorney General agrees the court should have excluded count 1 in its calculation of the fine and further asserts it should have used $240 as the basis for calculating the fine under the version of section 1202.4, subdivision (b)(1) in effect at the time defendant committed the crimes. We agree with the Attorney General and reduce the fine to $3,360, but in all other respects affirm the judgment.

FACTS

The trial court deemed defendant's girlfriend, Yullizet Pineda, to be an unavailable witness and allowed the prosecution to read her preliminary hearing testimony to the jury at trial. According to that transcript, Pineda and defendant were in the bedroom of her apartment when she told him that she wanted to end their relationship, causing defendant to act "desperate" and cry. Not wanting any problems, Pineda went into the bathroom to wait for defendant to leave.

2

While in the bathroom, Pineda sent several text messages to her roommate Jeanet Mellin, who was in the kitchen or living room of the apartment. One of the messages informed Mellin that defendant had not left the apartment and warned her not to enter the bedroom until he left because Pineda was "afraid he's going to do something to [her]." In another message, Pineda stated, "'I'm afraid . . . that he might come in because he wanted to use the gun. And he told me that if I call the police, he was going to get everyone.'" Pineda also asked Mellin to tell her when defendant left the apartment and to call the police.

At defendant's request, Pineda came out of the bathroom to talk to him. She told defendant she did not want to continue the relationship "regardless of what was going to happen." Defendant then pulled out a gun, "cocked it and gave it to [her], telling [her] to kill him or else he would kill [her] family" because "he would rather die if he couldn't have [her]." Pineda grabbed the gun and placed it by her side. She told him she did not want to kill him but that "he had to pack his clothes and leave." After "talking to him for a while," Pineda tried to back out of the bedroom to give the gun "'to someone to prevent some injury to [her] or someone else.'" Defendant told her to give the gun back to him and reached for it. As he did so, Pineda tripped and fell with defendant on top of her. The gun fired and a bullet struck her left hand. Pineda did not know how she got shot, who shot the gun, how it went off, or where it went.

Pineda was taken to the hospital where she told a police officer she went into the bathroom to get away from defendant because they were having an argument and she feared "he was going to shoot himself and possibly shoot her." At some point during the argument, defendant had produced a gun, pointed it at Pineda, and said "he was going to shoot her, . . . her family, and then . . . himself." The statement scared Pineda and she took it seriously. Defendant thereafter gave the gun to Pineda and told her to shoot him because he was upset about breaking up. After taking the gun, Pineda tried to leave but defendant grabbed her arm and they struggled over the gun. Pineda did not want to give

3

the gun back to him because she was afraid he would shoot her.  During the struggle, they fell to the ground and the gun went off.

DISCUSSION

*1. Sufficiency of the Evidence on Count 1*

The difference between the two charges of assault with a firearm is that count 1 concerns "the struggle over the firearm" whereas count 2 involves "the physical act of pointing the gun."  Defendant contends the evidence is insufficient to show he had the necessary mental state to support his conviction in count 1.  We disagree.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'"  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

The crime of assault with a firearm is an assault committed "upon the person of another with a firearm."  (§ 245, subd. (a)(2).)  Section 240 defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Although "mere recklessness or criminal negligence is . . . not enough" "[a]ssault is . . . a general intent crime" (*People v. Williams* (2001) 26 Cal.4th 779, 788 (*Williams*)) that "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."  (*Id*. at p. 790.)  "'The pivotal question is whether the defendant intended to

4

commit an act likely to result in such physical force . . . ." (*Id*. at p. 785.)  A defendant may be guilty of assault even if he or she believed the act was not going to result in the infliction of force on another if "a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery." (*Id*. at p. 788, fn. 3.)

Here, defendant knew the following:  (1) he had given a loaded gun to Pineda, who had just broken up with him, and instructed her to shoot him or he would shoot her and her family; (2) she did not comply with his demand to kill him, instead telling him she did not want to shoot him and for him to pack up his clothes and leave; (3) she refused to give the gun back when he asked for it; and (4) when she tried to back out of the bedroom, he reached for the gun, grabbed her arm, and struggled with her over the gun.  A reasonable person viewing these facts would find defendant's act of struggling to wrest possession of a gun from a woman, who most likely would fight hard to maintain possession of it due to defendant's threats to her family and her life if she did not do what he asked, would naturally and probably result in the gun going off.  To this end, Pineda admitted telling a police officer that she was "afraid that [defendant] was going to shoot [her] or himself and that's why she struggled for the gun[.]"  Given defendant's ultimatum threatening to shoot Pineda and her family if she did not shoot him, we reject his assertion it must be assumed "he wanted the gun to shoot himself" only.

Defendant maintains his conduct in "[r]eaching for a loaded gun" was "nothing more than reckless and negligent."  But he did more than just reach for the gun. "Although reckless conduct alone does not constitute a sufficient basis for assault or for battery even if the assault results in an injury to another, 'when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the battery is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety.'" (*People v.*

*Martinez* (1977) 75 Cal.App.3d 859, 863-864 [fact-finder could infer the defendant "acted with a wanton and willful disregard for human life" by throwing a beer bottle that bounced off police car and struck officer and shattered, even if the defendant did not intend to strike officer].)  Here, a reasonable jury could conclude defendant acted with wanton and willful disregard for human life and safety by grabbing Pineda's arm and struggling for possession of the loaded gun after she refused to comply with his demand.

Defendant's reliance on *People v. Cotton* (1980) 113 Cal.App.3d 294 (*Cotton*) is misplaced.  First, *Cotton* reversed the defendant's conviction of assault with a deadly weapon after he collided with a police car during a high speed chase because the trial court erroneously relied on the doctrine of transferred intent and "simply transposed an intent to drive recklessly into an intent to commit a battery." (*Id*. at p. 302.)  That did not happen here.  Second, *Cotton* is based on the principle "that intent to commit a battery, i.e., attempted battery, is an element of assault with a deadly weapon[,]" which has been "fatally undermine[d]" by *Williams*, *supra*, 26 Cal.4th at p. 788.  (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1190 [under *Williams*, "a defendant need not intend to commit a battery, or even be subjectively aware of the risk that a battery might occur . . . [but] need only be aware of what he is doing"].)

*2. Section 654*

The imposed sentence of seven years consisted of three years on count 2 (assault with a firearm based on defendant's act of "pointing the gun") and a consecutive four-year term for the personal use of a firearm enhancement.  The court also ordered a two-year sentence on count 3, plus a consecutive four-year term for the attached personal use of a firearm enhancement, to run concurrent to the sentence on count 2.  Defendant argues the court erred in not staying the sentence on count 3 and its accompanying enhancement under section 654.

6

Under section 654, subdivision (a), "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." The statute bars multiple punishment for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.) "'''A trial court's [express or] implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.'''" (*Ibid.*) The court here found "count 3 is not subject to the provisions of [section] 654."

Defendant asserts this was error because his conduct in "pointing a firearm at Pineda while, at the same time, threatening to kill her and her family . . . arose from a single act with a single intent and objective," which was to "scare Pineda at the inception of the incident" into changing her mind about ending their relationship and then to "strengthen the severity of his threat" by pulling out the gun after Pineda said she would not change her mind "regardless what was going to happen." The Attorney General responds that this alone shows defendant had two separate objectives. We need not decide whether it does or not because that was not the only time defendant made criminal threats against Pineda.

Before the "pointing the gun" incident, Pineda had gone into the bathroom when defendant began to act "desperate" and cry after she told him she wanted to end their relationship. While in the bathroom Pineda sent several text messages to Mellin, including one stating she was scared defendant would use his gun and that he had told her "'he was going to get everyone'" if she "'call[ed] the police.'" Thus, defendant made a criminal threat against Pineda before the subject incident.

Then after Pineda came out of the bathroom, at defendant's request, he pointed the gun at her and threatened to kill her and her family if she did not shoot him

7

first.  The trial court could have reasonably found defendant's intent and objective before Pineda went into the bathroom was to "'get everyone'" *if she called the police* and that when he pointed the gun at Pineda, he harbored a new and separate intent to injure Pineda *if she did not comply with his request to shoot him* or continue their relationship.  Thus, substantial evidence supports the court's finding that defendant had separate intents and objectives when he made his criminal threat before Pineda entered the bathroom and when he committed assault with a firearm in pointing the gun at her after she came out of the bathroom.  (*People v. Nubla* (1999) 74 Cal.App.4th 719, 731 [section 654 did not bar separate sentences for assault with deadly weapon and corporal injury to spouse where "act of pushing his wife onto the bed and placing the gun against her head was not done as a means of pushing the gun into her mouth, did not facilitate that offense and was not incidental to that offense"].)

Moreover, "'under section 654, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citation.]"  [Citations.]  This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.'"  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)  Here, the criminal threats made before Pineda entered the bathroom were physically and temporally separate from the ones defendant made after she came out into the bedroom, allowing defendant time to reflect in between.  (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [the defendant had separate intents and objectives in firing three shots, where the first two, committed one-minute apart, and the third a few seconds later, "were separated by periods of time during which reflection was possible"]; see also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021-1022 [consecutive sentences not barred under section 654 for terrorist threats and arson where "crimes were divisible" in time and also "had distinct objectives"].)  Although the amount of time Pineda remained

8

in the bathroom is unclear, it was long enough for her to send several text messages and for defendant to reflect. "'[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily" (*People v. Trotter*, at p. 368) and subsequently assaulted her with a firearm and made additional threats.

Defendant acknowledges "the record supports a theory that [he] threatened Pineda prior to removing the gun from his waistband and pointing it at her. However, [he] harbored a singular objective during the entire encounter in Pineda's apartment that day," i.e., "holding on to his failing relationship." In essence, defendant urges this court to disregard the factual inferences the trial court implicitly made and instead make inferences more favorable to him. That is not our role on appeal. Because substantial evidence supports the trial court's determination that defendant had separate objectives, no error occurred under section 654.

*3. Restitution Fine*

Section 1202.4, subdivision (b)(2) authorizes a court to impose a restitution fine on a person convicted of a felony by using a statutory amount "multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (*People v. Urbano* (2005) 128 Cal.App.4th 396, 406.) Under section 1202.4, subdivision (b)(1), "If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012." Restitution fines may not be based on counts that "were stayed pursuant to section 654, subdivision (a)." (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483; *People v. Carlson* (2011) 200 Cal.App.4th 695, 710.)

In this case, the trial court imposed a restitution fine of $4,200, "computed as $200 for every year of imprisonment times the number of felony counts," apparently using the prior statutory amount of $200, which was increased to $240 "starting on

9

January 1, 2012." (§ 1202.4, subd. (b)(1); Stats. 2012, ch. 868, § 3, p. 7181.) Defendant contends this was error because the court had stayed the sentence on count 1 under section 654 and should have also stayed the sentence on count 3. The Attorney General agrees as to count 1, as do we. We also agree with the Attorney General that a fine for count 3 was appropriate because section 654 does not bar a separate sentence on that count, and that the amount of $240 should have been used in the calculation instead of $200 because defendant's crimes occurred in April 2012. The restitution fine is thus modified to $3,360.

DISPOSITION

The judgment is modified to reduce the restitution fine from $4,200 to $3,360 for defendant's conviction for assault with firearm in count 2. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the change and forward it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

IKOLA, J.

10