Filed 7/11/14  In re Nicolas P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re NICHOLAS P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS P.,<br><br>Defendant and Appellant. | F068400<br><br>(Super. Ct. No. 13CEJ600723-1A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous, II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Cornell, Acting P.J., Gomes, J. and Kane, J.

The juvenile court found that appellant Nicholas P. was a person described in Welfare and Institutions Code section 602 after it sustained allegations charging appellant with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)),[1] corporal injury to a spouse/cohabitant (§ 273.5, subd. (a)) and false imprisonment by violence (§ 236). On November 13, 2013, the juvenile court set appellant's maximum term of confinement at five years eight months and committed appellant to the New Horizons program for a term not to exceed one year.

On appeal, appellant contends the juvenile court violated section 654 when it used his adjudications for corporal injury and false imprisonment to add consecutive terms of one year and eight months to his maximum term of confinement. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In September 2013, appellant's then 18-year-old ex-girlfriend, K.F., was temporarily living with appellant and his mother in his mother's Fresno residence. On the morning of September 9, 2013, at approximately 1:30 a.m., K.F. returned to the residence after attending a party at her family's house. She apologized to appellant for being late. He had an angry look on his face and asked her why she did not call him and why she was out so late. He told her in an angry voice to "get to the back room," referring to his bedroom. Appellant's mother was the only other person in the house and she was in her bedroom sleeping.

K.F. went to the back room and began packing her belongings because appellant had told her she had to leave the next day because he was leaving for foster care. As K.F. was putting her things in a pile, appellant entered the room and asked her where she thought she was going. She explained that his mother would not let her stay there unless she got food stamps and she was unable to get food stamps. Appellant told her she was

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

worthless and began throwing her belongings around the room. He told her she was not going to leave him and became increasingly angry.

At some point, appellant backhanded K.F. across the left side of her face, causing a black and blue bruise. This caused K.F. severe pain and she began to cry. Appellant then began striking K.F. in the face and on the legs with his closed fist, while pushing her down on his bed. Meanwhile, K.F. shouted at him to stop and banged on the wall in an attempt to wake his mother and get help. Appellant realized what she was doing and told her "don't f***ing wake up my mom or you don't know what the f*** I'm [going to] f***ing do to you." K.F. was dazed and did not want any more violence so she stopped talking.

Appellant left the room to see if his mother was awake. K.F. was afraid he was going to get a weapon so she found a pair of "little kid scissors" with sharp points in her purse and put them in the waist of her shorts. Appellant returned with a knife that he put to his throat and said he no longer wanted to live because he hit a girl. She told him to put the knife down so he put it in his pocket and began yelling at her again. He then grabbed her, threw her on the bed, and began pushing and punching her, causing the scissors in her waistband to move around and scratch her legs.

Appellant put his hands around K.F.'s neck and choked her for "a second" and put the scissors to her face while asking her what she was trying to do. He said, "You're trying to hurt yourself. Let me help." Then he told her he would get her while she was sleeping. He said, "I'll suffocate or stab your ass when you're sleeping." He grabbed a pillow and put it over her face but it did not interfere with her breathing. She pushed the pillow away and he told her he would just wait until she was asleep.

Appellant backed away from K.F. and told her to pick up her things. As she was putting things into her purse, appellant grabbed her bottle of prescription Vicodin and started taking the pills. K.F. slapped the bottle out of his hand and grabbed the pills out of his mouth.

3

Appellant announced he was going to sleep in the living room so that K.F. could not leave. She remained in his room and appellant sat in a chair in the living room and stayed awake. K.F. eventually fell asleep but awoke an hour or two later to see if she could leave but appellant was still awake in the living room. She saw him coming back to the room and she pretended to be asleep. Appellant lay down next to her and told her he was sorry for hitting her. He said he was angry because he had to go to foster care the next morning. He wanted her forgiveness and wished God would take him for what he did and he wished he could kill himself.

Appellant woke K.F. up around 9:30 a.m. and told her she needed to leave for 30 minutes because someone from child protective services was coming. He told her she should go hang out with one of their friends and return but she walked home instead.

K.F. was treated for her injuries at a hospital where she was provided a neck brace because she could not hold her head up. She had black and blue bruises around her eye, as well as a severe headache, dizziness and fainting spells. She also had bruises on her stomach, back and leg.

On September 19, 2013, the Fresno County District Attorney filed a wardship petition in juvenile court alleging appellant fell within the provisions of Welfare and Institutions Code section 602 by reason of his commission of the following offenses: count I-assault with a deadly weapon (§ 245, subd. (a)(1)); count II-assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); count III-infliction of corporal injury resulting in a traumatic condition upon a spouse or cohabitant (§ 273.5, subd. (a)); and count IV-false imprisonment by violence (§ 236).

In October 2013, at the jurisdictional hearing, the juvenile court found counts II, III and IV true beyond a reasonable doubt and declared them to be felonies. The court found there was insufficient evidence to support a true finding as to count I and discharged appellant as to that count.

4

In November 2013, at the dispositional hearing, the juvenile court set appellant's maximum term of confinement at five years and eight months, consisting of four years for the assault, a consecutive one-year term for corporal injury (one-third the middle term of three years) and an eight-month term for false imprisonment (one-third the middle term of two years). In so ruling, the court stated, "Separate sentences are appropriate … [because] the crimes involve separate acts of violence or threats of violence."

This appeal ensued.

## DISCUSSION

Appellant contends the assault, corporal injury and false imprisonment adjudications stem from one course of conduct. For that reason, he argues, the juvenile court violated section 654 by imposing separate terms for each offense. We disagree.

Section 654 provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The purpose of section 654 is to ensure a defendant's punishment is commensurate with his or her culpability. (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.) A course of conduct that constitutes an indivisible transaction violating more than a single statute cannot be subjected to multiple punishment. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248.) "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) The sentences on the remaining counts must be stayed. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.)

If, on the other hand, "[the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective though the violations shared common acts or were parts of an otherwise indivisible course of conduct."

5

(*People v. Beamon* (1973) 8 Cal.3d 625, 639.)  The trial court's determination that the defendant had more than one objective is factual and will be upheld on appeal if supported by substantial evidence.  (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

Additionally, even if the defendant harbors but one objective throughout the commission of the crimes, if his conduct is "divisible in time," it may be appropriate to impose multiple punishments for the violations.  (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)  "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken."  (*Id*. at p. 935.)

We conclude substantial evidence supports the juvenile court's implied factual finding that appellant had multiple independent objectives:  he wanted to physically assault K.F. and keep her from leaving his mother's house.  We further conclude the assault was divisible in time, thus permitting appellant an opportunity to reflect before proceeding.

Appellant initiated the first assault when K.F. returned home from the party.  He was angry and struck her across the face.  He continued by striking her in the face and punching her in the legs while forcing her onto the bed.  When she shouted, he stopped and left the room to see if the noise woke his mother.

While checking on his mother, appellant retrieved a knife before returning to K.F. in his bedroom.  In those moments, he had sufficient time to evaluate what he was doing and stop.  Instead, he entered the bedroom with a new intent and mounted the second assault.  He grabbed K.F., threw her on the bed, and pushed and punched her.  He also choked her, held the scissors near her face, and threatened her by offering to help her hurt herself.

After mounting two separate assaults against K.F., appellant announced his intent to keep her from leaving by stationing himself in the living room between the bedroom

6

and the front door and keeping watch over her. She testified she wanted to leave but had to wait for him to fall asleep.

Appellant contends the juvenile court erred in not staying the term on the false imprisonment offense under section 654, relying on *People v. Nubla* (1999) 74 Cal.App.4th 719 (*Nubla*). However, *Nubla* provides no support for his contention because the issue of whether a false imprisonment offense should be stayed under section 654 was not raised in that appeal.[2]

Appellant further contends his conduct was not divisible in time because he acted "in the heat of the moment" in committing the offenses with "mere seconds, or minutes at the most" between them. Appellant cites *People v. Kwok* (1998) 63 Cal.App.4th 1236 (*Kwok*) in order to distinguish it from the facts here. However, *Kwok* is so factually distinct as to be irrelevant. The "course of conduct" at issue under section 654 in *Kwok* involved two burglaries that occurred nine days apart.[3] Here, appellant committed the

---

[2]  In *Nubla*, appellant pushed his wife onto the bed facedown, pressed a gun to her head, then turned her over and put the gun in her mouth. (*Nubla*, *supra*, 74 Cal.App.4th at p. 723.) Appellant was found guilty of assault with a deadly weapon, corporal injury on a spouse, and false imprisonment. (*Ibid*.) *The trial court* imposed separate sentences on the first two offenses and *stayed sentencing on the false imprisonment offense under section 654*. (*Id*. at p. 724.) On appeal, appellant challenged the imposition of separate sentences on the assault with a deadly weapon and corporal injury to a spouse offenses, claiming they were part of an indivisible course of conduct and thus subject to the limitations of section 654.

[3]  *Kwok* involved a burglary of a woman's apartment and then another burglary of the apartment and assault of the woman separated by nine days. (*Kwok*, *supra*, 63 Cal.App.4th at pp. 1256-1257.) On appeal, the defendant argued, inter alia, that imposition of a consecutive sentence for the first burglary was precluded by section 654 because it was part of a "course of conduct." The court disagreed. While finding that the defendant's entries in the victim's residence could be said to constitute a "'course of conduct' in a broad sense because the first entry was intended at least in part to facilitate the crimes committed nine days later," it found the entries were clearly a "'course of conduct divisible in time,' consisting of separate offenses which may therefore be separately punished." (*Kwok*, *supra*, at p. 1256.)

offenses over approximately eight hours, making his case more factually akin to *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*).

In *Trotter,* the defendant stole a taxi and fired three shots at a police officer during a chase on the freeway. The defendant fired the second shot about a minute after the first shot and the third shot seconds later. (*Trotter*, *supra*, 7 Cal.App.4th at pp. 365-366.) He was convicted of vehicle theft, evading a police officer, and three counts of assault with a firearm, and he was sentenced separately on two of the assaults. (*Id.* at p. 365.) The appellate court found no error, reasoning that the defendant's conduct became more egregious with each successive shot, that each shot required a separate trigger pull, and that all three shots were separated by periods of time during which reflection was possible. The court stated: "'Defendant should ... not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his ... assaultive behavior.' [Citation.]" (*Id.* at p. 368.) Moreover, "when [the] defendant pauses and, having the option to land another blow or to break off the attack, chooses the former course of action, his culpability increases and his intent, though the same in kind, can be considered separate and distinct ...." (*Id*. at pp. 368-369, fn. 4.)

As in *Trotter*, appellant had sufficient time to reflect and discontinue his assaultive behavior toward K.F. and his confinement of her. Instead, he continued and it escalated. Under the circumstances of this case, section 654 does not apply and the juvenile court properly imposed a separate term for each count. We find no error.

## DISPOSITION

The judgment is affirmed.