Filed 1/27/16  P. v. Salimi CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G050107 |
|      v. | (Super. Ct. No. 11WF1306) |
| NAVEED ASHRAF SALIMI, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

Naveed Ashraf Salimi appeals his conviction for first degree robbery. He asserts his due process rights were violated when the trial court excluded statements he made while committing the offense that would have established a "claim of right" defense, negating the first degree robbery charge. Salimi also alleges he received ineffective assistance of counsel and the trial court made a sentencing error. Finding all the contentions lack merit, we affirm the judgment.

I

In April 2011, Lois Burns was living at the National Inn in Garden Grove. She had been friends with Salimi for six or seven years. Salimi gave Burns a laptop computer, but she determined the computer was stolen and got rid of it the next day. She then borrowed a laptop from her mother, Irma Ouellette, who also lived at the National Inn.

Several days later, Burns went to her room and found Salimi there with another friend. While Burns was talking with Salimi in her room, he walked over to her mother's computer that was sitting open on a table. As he reached for the keyboard to "play around on it," she told him not to touch it. Salimi touched the computer and eventually picked it up off the table. Burns repeatedly told Salimi to give her the computer. He refused and left the room with it.

Burns went to her mother's room and stated Salimi took the computer. Burns and Ouellette followed Salimi to the parking lot and confronted Salimi. Burns attempted to get the computer back by asking for it and trying to take it from him. Ouellette told Salimi the computer belonged to her and pointed out the "Velocity" logo marking on the computer several times. She repeatedly asked Salimi to give the computer back to her.

After Burns attempted to grab the computer from Salimi's hands, he first held it above his head out of her reach, and then he took out a knife and swung it towards her before turning and leaving with the computer. Burns called the police. Two days

2

later, Salimi returned the computer to the office at the National Inn where Ouellette could get it.

Around this same time, S.B. was also living at the National Inn. On May 3, 2011, she was cleaning her room with the door propped open when Salimi walked into the room uninvited. Salimi asked S.B. if she wanted to get high and have sex; she said "no" and asked him to leave. Salimi asked her four or five more times and got more and more angry every time she refused. Salimi pushed her onto the bed, covered her mouth and nose with his hand, and held a switchblade to her throat. He fondled her breasts and pushed her down when she tried to get up. Every time she tried to move or scream, he twisted the switchblade into her neck and told her he would kill her if she talked to the police or anyone else. The attack lasted approximately 20 to 30 minutes before Salimi pulled the knife away and left the room.

S.B. got up and went to the shower to wash away the blood and the "grimey feel of his hands[.]" When she got out of the shower, Salimi was standing in the bathroom doorway, moving his hands near his waist area. She yelled at him to leave and he walked away, slamming the motel room door behind him. S.B. waited approximately one month to report the incident to the police because she was scared next time he would "slit [her] throat."

An information charged Salimi with first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a)) (count 1);[1] aggravated assault of Burns (§ 245, subd. (a)(1)) (count 2); false imprisonment of S.B. by violence or deceit (§§ 236, 237, subd. (a)) (count 3); aggravated assault of S.B. (§ 245, subd. (a)(1)) (count 4); dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) (count 5); and criminal threats (§ 422) (count 6). The information alleged Salimi personally used a deadly weapon (§ 12022, subd. (b)(1)),

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

3

as to counts 1, 3, 5, and 6.  The information further alleged Salimi sustained a strike prior. (§§ 667, subds. (a)(1), (d), (e)(1), 1170.12, subds. (b), (c)(1).)

At trial, the court sustained the prosecutor's many hearsay objections whenever Salimi's counsel asked Burns or Ouellette if they heard Salimi say he believed the computer belonged to him anytime during the robbery.  For example, the following exchange occurred during cross-examination of Burns:

"[Defense counsel]:  And he comes to your place.  And he believes, according to what you think, that this computer belongs to him, right?  So he takes it.

"[Burns]:  My recollection.

"[Defense counsel]:  I am sorry?  I didn't hear you.

"[Burns]:  It's my recollection, yes.

"[Prosecutor]:  Your honor, objection to speculation, lack of foundation, move to strike the answer.

"[Court]:  I'm going to sustain.  It's a little vague.  You need to tighten this up a little bit.  I'll strike the last response.

"[Defense counsel]:  Did . . . Salimi while he was in your [room] and he took the computer, claim that it belonged to him?

"[Prosecutor]:  Objection.  Calls for hearsay.

"[Court]:  Sustained

"[Defense counsel]:  Well, in the [room] did you hear anything that would sound as though he was claiming the computer was his?

"[Prosecutor]:  Objection.  Calls for hearsay.

"[Court]:  Sustained on hearsay grounds."

A similar exchange occurred during Ouellette's cross-examination:

"[Defense counsel]:  Is it your belief that . . . Salimi claimed this computer?

"[Prosecutor]:  Objection.  Calls for hearsay.  I can be heard on that, if necessary.

"[Court]:  It also calls for speculation.  I will sustain as phrased.

"[Defense counsel]:  Based on what you heard, is it your belief that . . . Salimi was claiming ownership of this computer?

"[Prosecutor]:  Objection.  Answer calls for hearsay.

"[Defense counsel]:  Not offered for the truth of the matter, your honor.

"[Court]:  Why don't you two approach real quick off record.

(Off-record discussion.)

"[Court]:  I'm going to sustain.  And you can rephrase another question."

The jury found Salimi guilty on all counts and found true all the enhancements.  A court trial was held regarding Salimi's prior conviction, and the trial court found the strike prior allegation to be true.

The trial court denied Salimi's motion for new trial based on ineffective assistance of counsel.  The court sentenced Salimi to 21 years as follows:  eight years as to count 1; one year for the section 12022, subdivision (b)(1), enhancement on count 1; six years as to count 5; one year for the section 12022, subdivision (b)(1), enhancement on count 5; and five years for the strike prior.  The court also ordered Salimi to serve a concurrent prison term of six years for count 4.  The court stayed sentencing on counts 2, 3 and 6 (§ 654), and struck the section 12022, subdivision (b)(1), enhancements on counts 3 and 6 for purposes of sentencing.

## II

### A.  Excluded Statements

Salimi maintains the trial court erred in excluding statements that would have proved he believed the computer he took from Burns's room belonged to him.  He

5

asserts the evidence was non-hearsay pursuant to Evidence Code section 1250.  He concludes the court's error was prejudicial because if the evidence had been admitted, the jury would have been instructed on the claim of right defense, and the jury would have formed a reasonable doubt as to whether Salimi was honestly mistaken about whether the computer was the one he gave Burns several days before.  Salimi asserts exclusion of the evidence requires reversal of the judgment.

Evidence Code section 1250 provides that evidence of a statement of a declarant's then existing state of mind is admissible to prove the declarant's state of mind where it is either at issue or explains the declarant's actions.  If we accept, without deciding, the statements were admissible and the trial court erred, we nevertheless conclude any error was harmless under both *Watson*[2] and *Chapman*[3] standards.

"It is an established principle of the law of theft that a bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent."  (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1017.)  On appeal, Salimi asserts the excluded statements would support the "claim of right" defense and instruction.  He is right.

However, as we will explain, the trial court's purported error does not warrant reversal of the judgment because the record plainly shows defense counsel argued the evidence showing Salimi believed the computer belonged to him established the taking was a simple theft rather than a more serious robbery.  Counsel advocated this sole defense during closing argument and he requested instruction on the lesser offenses of robbery.  On appeal, Salimi did not assert exclusion of the statements prejudiced his ability to raise the defense advocated by his counsel at trial.  As we will explain in more

---

[2] *People* v. *Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

[3] *Chapman* v. *California* (1967) 386 U.S. 18, 23-24 (*Chapman*).

detail below, Salimi asserts the excluded statements prevented him from raising a defense his counsel neither mentioned during trial nor requested an instruction on.

We agree with Salimi that the record certainly contained evidence that would have supported a claim of right defense. It can be reasonably inferred Salimi believed the computer was his because the taking occurred just days after Salimi left a computer with Burns. Salimi and Burns were long time friends and argued for a significant amount of time over possession of the computer, supporting the theory there was a dispute over ownership. For a lengthy period of time in Burns's room, and later in the parking lot, Burns tried to convince Salimi to give her back Ouellette's computer. He did not just snatch a computer from her room and run. They argued about possession for over 10 minutes, supporting the inference Salimi mistakenly believed it belonged to him.

In addition, Ouellette testified she attempted to convince Salimi the computer was not his by pointing out the computer had a "Velocity" logo. This testimony suggests Ouellette understood Salimi may have mistakenly believed the computer belonged to him. The testimony does not make sense if Salimi was simply stealing her computer because it would not matter if it had indentifying marks different from other computers. That Salimi was mistaken about the computer is also supported by the fact he returned it unharmed to his friend two days later.

A trial court must give a requested instruction when there is sufficient evidence to support it, that is, when there is evidence from which reasonable jurors could conclude the facts underlying the instruction exist. (*People v. Barrick* (1982) 33 Cal.3d 115, 132, superseded by statute on another ground as noted in *People v. Collins* (1986) 42 Cal.3d 378, 393.) Based on our record, and without the benefit of the excluded statements, we conclude there was sufficient evidence to support a claim-of-right defense and instruction. However, this determination does not assist Salimi because his counsel advocated a different defense on his behalf.

In closing argument, Salimi's counsel focused on convincing the jurors the crime was a simple theft rather than a robbery. Salimi's counsel asserted there was "some dispute about the computer" and this fact was relevant to the jury's determination of whether this was a lesser offense. Counsel argued the crime of robbery had not been established because it was undisputed Salimi returned the computer, negating the fifth element of robbery, i.e., Salimi did not intend to permanently deprive the owner of the property. Counsel also noted the computer was not damaged and the victim "suffered no apparent injury."

Despite the evidence in the record supporting a claim of right defense, defense counsel did not mention it. Defense counsel did not request an instruction on the claim of right defense, but secured instructions on the lesser crimes of grand theft and petty theft. Those instructions were all that counsel needed to support the defense he offered in his closing arguments.

Although defense counsel did not request an instruction on claim of right, it is interesting to note the prosecution requested but then withdrew its request for a claim of right instruction. This fact is significant because in this case, the court instructed the jury *before* the parties presented their closing arguments. Under this scenario, counsel needed to decide the instructions needed for the chosen defenses. We do not review cases in a vacuum, and the purpose of this appeal is not to give Salimi a new trial now having the full benefit of hindsight that the chosen defense was not successful. Based on the record before us, any error by the trial court in excluding the statements do not warrant reversal of the judgment.

This ruling brings us to the question of whether defense counsel was ineffective. However, based on this record, we can only speculate on whether defense counsel made a strategic decision, or was ineffective, in failing to assert the claim of right defense during closing argument. There is no evidence in the record suggesting counsel's decision was based on the court's erroneous exclusion of the statements. It is just as

8

likely the decision was based on counsel's conclusion a stronger defense was to argue the computer taking was a mere theft rather than a robbery. Moreover, we note Salimi's ineffective assistance of counsel claim relates only to the proper admission of evidence. He does not assert his counsel was ineffective in failing to request a claim of right jury instruction.

If counsel was ineffective on either issue, our affirmance in this appeal does not prejudice or preclude Salimi from raising the claim by a habeas corpus petition. Indeed, the preferred method is by habeas because of the rules permitting extra-record evidence to be submitted on the issue of the counsel's reasons for the challenged action. (*People v. Mendoza Tello* (1997) 15Cal.4th 264, 267 [court's rejection of a incompetency challenge on appeal does not preclude a subsequent habeas petition].) We simply do not have enough evidence in this record to decide if counsel made a reasonable strategic decision or was ineffective.

B. *Sentencing*

Salimi argues the trial court erred in imposing a concurrent sentence on count 4, aggravated assault against S.B. He argues the trial court should have stayed the sentence pursuant to section 654 because it was in the same act and course of conduct as count 5, dissuading a witness. The Attorney General argues the sentence was correctly imposed because there was ample evidence for the trial court to determine Salimi harbored separate intents and objectives when he assaulted S.B. and when he sought to dissuade her from reporting the assault. We agree the trial court's sentencing was correct.

Section 654 states, "An act or omission that is punishable in different ways by different provisions of law shall be punishable under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished by more than one provision." (§ 654, subd. (a).) "'[I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and

not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Akins* (1997) 56 Cal.App.4th 331, 338-339.) "The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]" (*Id*. at p. 339.) Therefore, "the imposition of concurrent terms is treated as an implied finding that the defendant bore multiple intents or objectives, that is, as a rejection of the applicability of section 654." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.)

As to victim S.B., the court stayed the sentence for count 3 (false imprisonment) but imposed a sentence of six years for count 4 (aggravated assault). By staying the sentencing as to the false imprisonment charge, we can infer the trial court determined Salimi had the same criminal objective in committing false imprisonment as the aggravated assault. Similarly, the court stayed the sentence on count 6 (criminal threats) and sentenced Salimi to six year term for count 5 (dissuading a witness), indicating the trial court determined these two counts arose from the same course of conduct.

Salimi asserts the court should have also stayed the sentence on count 4 (aggravated assault) because it is the same criminal objective as count 5 (dissuading a witness). We disagree because there is substantial evidence to support the court's conclusion Salimi harbored a different criminal objective when he assaulted S.B. than when he dissuaded her from reporting that assault.

Salimi held S.B. down on the bed and assaulted her with a knife for 25 to 30 minutes while cursing at her, calling her names, and fondling her breasts. He also threatened to kill her if she reported the assault to the police. While it is unclear from the testimony as to the exact timing of the threat, it was not necessary to continue the assault.

10

Twisting a knife into his victim's throat effectively stopped her from leaving and permitted him to continue with his assault of her. Salimi's objective in imprisoning and assaulting S.B. was likely for sexual gratification and other vicious intents. Whereas his objective in threatening her not to report the misconduct was to keep himself free from incarceration. The trial court properly determined Salimi held multiple criminal objectives and sentenced him accordingly.

III

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.


11