Filed 6/30/23 P. v. Thao CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Respondent,<br>v.<br>TONY THAO,<br>Defendant and Appellant. | C094582<br>(Super. Ct. No. 18FE007345) |

A jury found defendant Tony Thao guilty of three counts of attempted premeditated murder and one count of shooting at an occupied motor vehicle with firearm enhancements. Defendant was sentenced to an aggregate term of 96 years to life. On appeal, defendant argues the evidence was insufficient to establish that he was the gunman. He further contends the People improperly shifted the burden of proof to defendant by pointing out during closing statements defendant’s failure to call logical witnesses. Finding no error, we affirm.

## BACKGROUND[1]

On the night of March 28, 2018, L.S., N.S., and Edwin C. met Manuel O. at the Mix Downtown (hereafter, the Mix), a nightclub in Sacramento. L.S. recognized a woman there named Molly V.,[2] who had previously taken N.S.'s gold necklace. L.S. and Manuel confronted Molly, and an altercation ensued as they attempted to take Molly's phone. Security guards broke up the skirmish and escorted Molly away. Shortly after, L.S. saw Molly outside using her phone.

L.S., N.S., and Edwin eventually left the Mix and got into L.S.'s borrowed car. L.S. sat in the driver's seat, N.S. sat in the passenger seat, and Edwin sat in the backseat behind the driver. Immediately after entering the car, a man approached the vehicle and confronted L.S., asking, "Why you messing with my girl?" After exchanging words, the man stepped several feet back, drew a Glock handgun, and fired nine or 10 shots into the vehicle. L.S. was shot in the chest and shoulder and N.S. was hit in his thigh. Edwin, who was not hit, called 911 at 1:37 a.m. on March 29, 2018.

L.S. described the gunman to law enforcement as an Asian male, five feet two inches in height wearing dark clothing with a dark hat. He also explained that he believed the shooter was associated with Molly. L.S. had previously met defendant and believed defendant was either Molly's boyfriend or husband. Though L.S. did not recognize defendant at the time of the incident, L.S. later identified the shooter as defendant from photos on Molly's social media. On the 911 call, Edwin described the

---

**1** To protect their privacy, we refer to some of the victims, witnesses and others by their full first names and last name initials and, subsequently, by their first names, and some by their first and last name initials. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

**2** The initials of Molly's legal name are K.S. To protect her privacy, we refer to this person by her full first name and last name initial and, subsequently, by her first name. (Cal. Rules of Court, rule 8.90(b)(10).)

gunman as an Asian male, between the ages of 20 to 26, 160 pounds, about five feet 11 inches in height wearing a dark blue baseball cap and a black bomber jacket.

The investigation determined that at 1:05 a.m. on March 29, 2018, Molly texted defendant three times saying, "Come right now," "He try pull my phone," and "He try fight me." At 1:17 a.m., she further texted, "He try grab my [*sic*]." Molly and defendant also called each other numerous times between 1:05 a.m. and 2:23 a.m. Between 1:23 a.m. and 1:34 a.m., shortly before Edwin called 911, Molly's and defendant's cell phones used the same cell tower in downtown Sacramento. The Mix is slightly outside that cell tower's general coverage area but a cell phone inside the Mix could still connect to this cell tower.

Molly is associated with the same address listed on defendant's Department of Motor Vehicles record. Defendant had pictures on his phone of a silver Subaru sedan parked in the driveway at that address. License plate readers showed that this Subaru was traveling just south of the Mix at 1:23 a.m. on March 29, 2018, 14 minutes before Edwin called 911. Over approximately the next week, transactions on Molly's and defendant's electronic benefit transfer or EBT cards were consistent with them traveling from Sacramento to Wisconsin. Police ultimately arrested defendant in Wisconsin on April 16, 2018. Officers found a .40-caliber bullet inside the vehicle defendant was driving when apprehended. A .40-caliber Glock handgun is registered to defendant but was never located. Defendant's identification indicated he was five feet seven inches in height and weighed 150 pounds.

Defendant was charged with three counts of willful, premeditated, and deliberate attempted murder (Pen. Code, §§ 664, subd. (a), 187 subd. (a))[3] and one count of shooting at an occupied motor vehicle. (§ 246.) As to each count, it was alleged that

---

**3** Undesignated statutory references are to the Penal Code.

defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); that doing so proximately caused great bodily injury or death (§ 12022.53, subd. (d)); and that defendant personally used a firearm. (§§ 12022.5, subd. (a), 12022.53, subd. (b).)

At trial, L.S. identified defendant as the shooter. Edwin testified that he did not see the shooter in court at trial. Geoffrey Loftus testified for the defense as an expert in perception and memory, explaining how eyewitness identifications can be unreliable and are impacted by factors such as stress and alcohol consumption.

The jury found defendant guilty on all four counts and found all the allegations true. The trial court sentenced defendant to state prison for an aggregate term of 96 years to life.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant argues the evidence is insufficient to establish that defendant was the shooter, and thus the verdicts violate his due process rights. We disagree.

A defendant bears a "massive burden" when claiming insufficiency of the evidence because our role on appeal is a limited one. (*People v. Akins* (1997) 56 Cal.App.4th 331, 336.) "In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record ' "in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. [Citation.]" (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.) "Reversal . . . is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient

substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Defendant maintains that L.S.'s eyewitness identification was insufficient to support his conviction because: (1) eyewitness identification is inherently unreliable; (2) L.S. was the only victim who identified defendant; (3) L.S. did not recognize defendant at the time of the incident but only identified him afterwards from photos on Molly's social media; (4) L.S.'s after-the-fact identification was colored by his expectation that the shooter was associated with Molly; and (5) Edwin could not identify anyone in the courtroom as the gunman. But "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see also *People v. Boyer* (2006) 38 Cal.4th 412, 480 ["Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime"].) L.S.'s testimony is neither physically impossible nor inherently improbable, and thus sufficiently supports defendant's conviction. All the issues raised by defendant pertain to the weight and credibility of L.S.'s testimony, which were matters for the jury to evaluate.

The circumstantial evidence offered by the People—the cell phone data, the communications between defendant and Molly, defendant's missing registered .40-caliber Glock handgun, the .40-caliber bullet found in defendant's vehicle, defendant's association with the Subaru spotted near the Mix at the time of the incident, and the evidence of flight to Wisconsin—further support the jury's verdict. Defendant argues that this evidence is all susceptible to an innocent explanation and thus does not establish defendant's guilt. " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances

reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 668.) Here, the circumstantial evidence compellingly supports defendant's guilt. While it may be reconciled with a contrary interpretation, we conclude that the evidence convinced the jury of defendant's guilt beyond a reasonable doubt and therefore reject defendant's challenge to the sufficiency of the evidence.

II

*Prosecutorial Misconduct*

Defendant contends the prosecutor's closing argument misrepresented the burden of proof and the law regarding circumstantial evidence. This alleged error, defendant argues, violated his federal and state right to a fair trial and requires reversal. We again disagree.

A. *Additional background*

Defendant's principal defense was that the People failed to prove he was the shooter beyond a reasonable doubt. During summation, defense counsel claimed the People's case was built on circumstantial evidence. He explained that, under CALCRIM No. 224, if the jury can draw multiple reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence, then the jury must accept the one that points to innocence. Defense counsel argued to the jury that: (1) defendant was near the Mix and calling Molly at the time of the shooting because he was picking up Molly; (2) Molly was likely involved with someone other than defendant, and that other person could have been the shooter; (3) the Subaru was not shown to be defendant's car; (4) the .40-caliber Glock handgun and .40-caliber bullet are common; and (5) Molly and defendant drove to Wisconsin because they were evicted, not to flee.

The People argued in rebuttal that defense counsel's arguments were based on speculation, not evidence: "[W]hat I've based my arguments on, is evidence. It's not

speculation.  I'm not asking you to speculate how many people possibly have that .40-caliber gun[.]  How many people might possibly have that same brand bullet?  How many people in that club could have been Molly's side piece or boyfriend on the side[?]  All of that is speculation.  It's telling you to think about what are the possibilities.  Look at the evidence."

To that end, the People pointed out defendant's failure to call Molly as a witness in support of his alternate interpretations of the evidence:

"[Prosecutor:]  Members of the Jury, you think about what is reasonable.  And there's a concept called, failure to call logical witnesses.  Basically that concept is, both sides can call witnesses that they believe have evidence in this case, and failure to call logical witnesses is something that jurors can consider.

"And what do I mean by that?  If the defendant was in fact on his way to pick up Molly, the logical witness is for Molly to come and testify and say[:]  Yeah, he was at home.  I called him because this is what happened.  He was coming to pick me up.  Came to pick me up, we went, nothing happened.

"[Defense counsel] wants you to believe this story of all of these possibilities, but there is no evidence to support that."

Defendant did not object to the prosecutor's statements.

B. *Analysis*

The standards for evaluating prosecutorial misconduct are well established.  "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

“ ‘As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]’ [Citation.]” (*People v. Hill* (1998) 17 Cal.4th 800, 820.) The Attorney General argues that defendant forfeited the claim by failing to object at trial. Defendant acknowledges this failure but, anticipating forfeiture, argues his trial counsel was ineffective in failing to raise the issue below. To forestall defendant’s claim of ineffective assistance of counsel, we exercise our discretion to reach the merits of this claim. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing merits of prosecutorial misconduct claim to avoid potential claim of ineffective assistance of counsel]; *People v. Williams* (1998) 17 Cal.4th 148, 162, fn. 6 [“An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party”].)

To prevail on a claim of prosecutorial misconduct in closing arguments, the defendant “ ‘must show that “[i]n the context of the whole argument and the instructions” [citation], there was “a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.” ’ ” (*People v. Dalton* (2019) 7 Cal.5th 166, 251-252.) In assessing this claim, the reviewing court “ ‘ “do[es] not lightly infer” that the jury drew the most damaging rather than the least damaging meaning from the prosecutor’s statements.’ ” (*People v. Ramirez* (2022) 13 Cal.5th 997, 1129.) While it is improper for prosecutors to misstate the law (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1266), they are given wide latitude during closing arguments to discuss the evidence and comment on reasonable inferences that may be drawn therefrom. (*People v. Hill, supra*, 17 Cal.4th at p. 819; *People v. Morales, supra*, 25 Cal.4th at p. 44.) Our Supreme Court has explained, “[I]t is neither unusual nor improper to comment on the failure to call logical witnesses.” (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)

Defendant asserts that the prosecutor's comment on his failure to call Molly as a witness improperly shifted the burden of proof to him. More specifically, defendant takes issue with the prosecutor's "assertion that [defendant] could not argue that the circumstantial evidence supported a reasonable conclusion of innocence without calling his wife Molly as a witness." To be sure, a prosecutor "may not suggest that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.' " (*People v. Young, supra*, 34 Cal.4th at pp. 1195-1196.) But here the prosecutor made no mention of defendant having a duty to produce evidence or affirmatively prove his innocence. Nor did the prosecutor assert that Molly had to testify before defendant could argue that the circumstantial evidence supported a finding of innocence. Rather, the prosecutor was commenting on the state of the evidence, as she was permitted to do. (See *People v. Woods* (2006) 146 Cal.App.4th 106, 112 ["A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. [Citation.] Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible"].) Pointing out that defense counsel's proposed alibi was speculative and not supported by the testimony of an alibi witness was not misconduct. (See *People v. Centeno* (2014) 60 Cal.4th 659, 673 ["[T]he prosecution can surely point out that interpretations proffered by the defense are neither reasonable nor credible"]; *People v. Thomas* (2012) 54 Cal.4th 908, 945 [finding no misconduct where prosecutor remarked during closing arguments that " '[n]ot one person came forward' to say defendant 'couldn't have done it, he was with me' "].)

For these reasons, we reject defendant's claim of prosecutorial misconduct.

## DISPOSITION

The judgment is affirmed.

KRAUSE, J.

We concur:

ROBIE, Acting P. J.

EARL, J.